[Crim. No. 10577. First Dist., Div. Two. Apr. 27, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
MILTON MICKEY MOORE, Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Eric Collins, Robert R. Granucci and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Appellant.

James C. Hooley, Public Defender, Dean A. Beaupre and E. Craig Goldman, Assistant Public Defenders, for Defendant and Respondent.

## OPINION

**ROUSE, J.**—This is an appeal by the People, pursuant to section 1238, subdivision (7), of the Penal Code, from an order dismissing an information against defendant Milton Moore after the trial court granted defendant's motion to suppress certain evidence under section 1538.5 of the Penal Code.

The appeal presents but one limited and clearly defined issue: Is a search warrant for the seizure of certain specified narcotics and narcotic paraphernalia valid when it is based solely upon an affidavit suggesting cause to believe that the defendant was unlawfully possessing and selling a par-

ticular restricted dangerous drug? We granted rehearing on the basis that our original conclusion, answering that question in the negative, was incorrect.

The record shows that by information filed on December 15, 1970, defendant Moore was charged with one count of possession for sale of a restricted dangerous drug, seconal, in violation of section 11911 of the Health and Safety Code. He was also charged with one count of possession of marijuana for sale, in violation of section 11530.5 of the Health and Safety Code.

On January 11, 1971, defendant was arraigned and pleaded not guilty to both charges.

On April 28, 1971, defendant moved to suppress evidence under section 1538.5 of the Penal Code. A hearing was thereafter held, and it was shown that on July 3, 1970, a search warrant had been issued for defendant's premises in Oakland, California. The affidavit in support of the search warrant averred that on July 2, 1970, defendant Moore had violated sections 11910 and 11912 of the Health and Safety Code by possessing and selling restricted dangerous drugs. The affidavit was signed by Officer Jennings of the Oakland Police Department, who averred that he had received information from a reliable confidential informant to the effect that on July 2, 1970, he saw defendant Moore counting and packaging approximately 6,000 seconal capsules. Affiant Jennings also averred that one Officer Habelt had advised him that a juvenile had told Habelt that defendant Moore was a pusher of dangerous drugs and that numerous high school students had told Habelt that defendant dealt in dangerous drugs. Finally, Jennings averred that the vice principal of Oakland High School had told him that defendant had been expelled after he came to school "high" on drugs.

The affidavit in support of the warrant set forth facts sufficient to justify issuance of the warrant. However, the magistrate used a form warrant printed for use in narcotics searches. The form contained blank spaces for filling in the names of the affiant and the accused, the dates of presentation of the affidavit and issuance of the warrant, a description of the premises to be searched, the name and signature of the issuing magistrate, *and the code sections alleged to have been violated*. The printed portions of the warrant referred only to narcotics and paraphernalia used in connection with narcotics. The blanks were all properly filled in with information conforming to that contained in the affidavit. Thus there was an ambiguity on the face of the warrant; the filled-in portion referred to code sections dealing with restricted dangerous drugs while the printed portion referred

to narcotics. Armed with this ambiguous warrant, the affiant officer, on July 3, 1970, searched the described premises, seized a quantity of dangerous drugs, and arrested defendant.

At the conclusion of the hearing on the motion to suppress, the trial court held that the affidavit was insufficient to support the search warrant, and the court therefore granted defendant's motion to suppress the contraband recovered on defendant's premises. The prosecution being unable to proceed further without this evidence, the information was thereafter dismissed.

Section 1525 of the Penal Code provides that "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, *and particularly describing the property* and the place to be searched." (Italics added.)

The language of section 1525 is in no sense ambiguous. Moreover, it is settled under California law that an affidavit in support of a search warrant must describe with reasonable particularity the property to be seized and must place a "meaningful restriction on the objects to be seized." (*People* v. *Barthel* (1965) 231 Cal.App.2d 827, 832 [42 Cal.Rptr. 290]; *People* v. *Alvarado* (1967) 255 Cal.App.2d 285, 291 [62 Cal.Rptr. 891].)

In determining the validity of the search warrant here involved, it might be well to re-examine some of the basic concepts of the exclusionary rule. The rule is based upon what has come to be known as the suppression doctrine. The doctrine dictates that contraband or any other form of incriminating evidence must be suppressed and may not be admitted against a defendant in a criminal trial when such evidence was discovered or obtained by police or other governmental agents whose methods of procedure are found by the court to have been unlawful on the basis of a violation of the United States Constitution's prohibition against unreasonable searches and seizures. The reason underlying the rule's adoption is premised upon the assumption that suppression of the evidence is the only available sanction which will effectively discourage and deter the employment of impermissible police methods violative of the citizen's right to freedom from unreasonable searches and seizures. The United States Supreme Court has expressed the rule's rationale on numerous occasions. In *Elkins* v. *United States* (1960) 364 U.S. 206 [4 L.Ed.2d 1669, 80 S.Ct. 1437], the court said, "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." (P. 217 [4 L.Ed.2d p. 1677].) And in *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933],

"[E]xperience [has shown that] . . . other remedies have been worthless and futile . . . ." (P. 652 [6 L.Ed.2d p. 1088].) The California court has made similar pronouncements. In *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], the court explained its reason for adoption of the exclusionary rule: "We have been compelled to reach that conclusion because other remedies have completely failed to secure compliance with the constitutional provisions on the part of police officers with the attendant result that the courts under the old rule have been constantly required to participate in, and in effect condone, the lawless activities of law enforcement officers." (P. 445.) In *People* v. *Benford* (1959) 53 Cal.2d 1 [345 P.2d 928], a pre-*Mapp* case, the California court said, " . . . California bases exclusion of evidence obtained by unconstitutional search and seizure, not upon due process, but upon the court's 'regard for its own dignity as an agency of justice and custodian of liberty.' " (P. 15.) And in *People* v. *Tarantino* (1955) 45 Cal.2d 590, 594 [290 P.2d 505], "[Constitutional] provisions protect the people from unreasonable invasions of their privacy by the police, and the determination of what is reasonable cannot be left to [the police] . . . . '[T]he Fourth Amendment has interposed a magistrate between the citizen and the police. . . . [This] was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law.' " In the case of *State* v. *O'Bremski* (1967) 70 Wn.2d 425 [423 P.2d 530, 532-533], the Supreme Court of that state discussed the nature of the rule: "The exclusionary rule is neither a statutory enactment nor an express provision of the Fourth Amendment to the United States Constitution. It is rather a command, judicially implied, intended to impose restraints upon law enforcement officers and to discourage abuse of authority when constitutional immunity from unreasonable search is involved. [Citation.] In each case the rights of the accused must be balanced against the rights of the public. [Citation.]"

While it is clear that the United States Constitution and the California Constitution each prohibits *unreasonable* searches and seizures, yet what is "unreasonable" conduct is essentially a question of fact to which certain presumptions must be applied. In the case of an arrest made on probable cause, there is a rebuttable presumption of reasonableness. In the case of searches made under warrant, there is a rebuttable presumption of reasonableness. In the case of warrantless searches there is a rebuttable presumption of unreasonableness. When a search or seizure is unreasonable, there has been a violation of constitutional rights and the evidence thus obtained is subject to suppression under the exclusionary rule as a deterrent to future illegal conduct.

Generally speaking, two conditions govern the rule's application: (1) the

evidence must have been obtained through an unreasonable seizure; and (2) there must be some possibility that the prophylactic purpose of the rule can be served.

In *People* v. *Gurley* (1972) 23 Cal.App.3d 536, 553 [100 Cal.Rptr. 407], this court, after stating the deterrent nature of the exclusionary rule, said, "In the situation where the officers act reasonably on the evidence before them . . . the exclusion of the evidence seized . . . will not prevent similar conduct in the future under similar conditions. No deterrence is involved if the officers have acted in good faith on the facts as they appeared, because presumably they will be entitled to, and will, so act again in the future."

In *People* v. *Superior Court* (1970) 5 Cal.App.3d 109, 115 [84 Cal.Rptr. 778], the court observed that "The exclusionary rule must be recognized as strong medicine which improperly employed may have highly undesirable side effects."

In 1970, the federal Court of Appeals, Second Circuit, considered the test of reasonableness in connection with an allegation that evidence had been seized under an invalid warrant. Defendants were arrested at a motel and uniformed officers were stationed outside the rooms to guard the premises while a search warrant was obtained. It was not disputed that the affidavit set forth facts sufficient to support issuance of a nighttime search warrant but the affidavit did not request authority for a night search and the warrant issued was for daylight searches. If the officers had noticed the defect in the warrant, all difficulty could have been avoided by the simple expedient of waiting for daylight before commencing the search, but they did not notice the defect and the search was conducted at night. In rejecting defendants' appeal for reversal of their conviction, the court said, "We hold that their failure [to wait for daylight] is within both the letter and the spirit of F.R.Cr.P. 52, directing that 'Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.' The purpose of the requirement of a search warrant, as the Supreme Court has repeatedly reminded us, is to 'assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry,' [citation], and Judge LeBlanc accomplished this purpose in full measure." "Judge LeBlanc must have known that the warrants might be executed at night; that was the very reason why the officers had come to his home." "Although the draftsmen of Rule 52(a) may not have envisioned its application to an 'error, defect, irregularity or variance' of this type, *surely there can be no good reason for holding police officers to a standard of perfection while excusing errors by judges that do not*

*affect substantial rights.* The Supreme Court has warned that 'the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. . . . A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.' [Citation.]" *(United States v. Ravich* (2d Cir. 1970) 421 F.2d 1196, 1201-1202, cert. den. 400 U.S. 834 [27 L.Ed.2d 66, 91 S.Ct. 69]; italics added.)[1]

■    Contrary to our earlier impression, we now believe that when the search warrant in the instant case is examined in the light of these principles, it becomes apparent that the trial court was in error when it granted defendant's motion to suppress the evidence obtained in the search of his premises. For our purpose here, the sufficiency of the affiadvit to support a warrant for the seizure of dangerous drugs is not disputed. The affiant police officer laid before the magistrate facts which that judicial officer considered, in the exercise of his independent judgment, sufficient to allow the defendant's privacy to be invaded in the public interest. The form warrant referred in its printed portions to narcotics but the filled-in portions related to a violation of the dangerous drug laws. We think it significant that the search and seizure was conducted by the same police officer who had sworn the affidavit. A warrant must be sufficient to allow the officer to ascertain what is authorized. In this instance, the searching officer obviously knew what it was he was looking for. No general "fishing expedition" is alleged. The affidavit stated that dangerous drugs were on the

---

[1]Similarly, in the case of *State* v. *Bisaccia* (1971) 58 N.J. 586 [279 A.2d 675], the Supreme Court of New Jersey dealt with a technically deficient search warrant. There the court observed that "The officer who executed the warrant was the affiant in the affidavit and he had personally made the surveillance of the premises detailed in the affidavit. The judge who issued the warrant of course intended the very building described in the affidavit, and the structure searched was the very premises the officer described in his affidavit. The motion to suppress rested upon the fact that the correct number of the building was 375, rather that 371. But the building was unmistakably described in the affidavit. . . . There would have been no problem had the warrant contained that further description. [Citation.]" (P. 676.) In an opinion upholding the validity of the search, Mr. Chief Justice Weintraub, speaking for the court, stated: "Here the policeman and the magistrate in good faith sought to abide by the Constitution. The place searched was undeniably the place as to which probable cause had been made out, and the place searched was in fact the place the warrant was meant to describe. Nor did the error in the street number in the warrant taint the justice of the search. At best the error would permit the projection of some possible evil in a supposititious case in which the officer executing the warrant might have gone or might have been thought by the occupant to have gone to the wrong target. Nothing of the kind occurred. . . . Here the officer was the affiant on whose affidavit the warrant had issued. He knew the judge who issued the warrant intended the building he had amply described in his affidavit. We see no threat to Fourth Amendment values in these circumstances. To suppress the truth would be a waste of the public interest." (P. 678.)

premises, the warrant was issued with the intent that dangerous drugs be seized, and it was dangerous drugs that were searched for and seized. If the warrant had been delivered to an officer unfamiliar with the facts as stated in the affidavit and he had not noticed the ambiguity, but had instead conducted a search for narcotics and during that search found dangerous drugs, we would have a different fact situation requiring different considerations. But that case is not before the court. All that must be determined in this case is whether a warrant is void because of an ambiguity on its face when that ambiguity cannot mislead the persons involved and has resulted from a clerical error in using the wrong form.

In *Tidwell* v. *Superior Court* (1971) 17 Cal.App.3d 780 [95 Cal.Rptr. 213], petitioner sought mandamus for the suppression of evidence seized in a nighttime search. The search warrant was a form warrant with wording choices for day searches only or for searches day or night. The issuing magistrate had neglected to strike out the inappropriate words. At the time of the search, the petitioner was already in custody and his apartment was unoccupied. In denying relief, the court said, "The failure of the officers to wait until daylight to conduct the search of rooms known to be unoccupied was harmless error and did not require the exclusion of the evidence seized. Furthermore, as stated in Civil Code section 3510: 'When the reason of a rule ceases, so should the rule itself.' " (P. 787.)[2]

In *People* v. *Christian* (1972) 27 Cal.App.3d 554 [103 Cal.Rptr. 740], the Court of Appeal, Second District, considered ambiguity in a supporting affidavit. In affirming conviction, the court said, "[I]t is the purpose of the rule which excludes illegally obtained evidence to deter illegal police con-

---

[2]But compare *People* v. *Mills* (1967) 251 Cal.App.2d 420 [59 Cal.Rptr. 489], and *Call* v. *Superior Court* (1968) 266 Cal.App.2d 163 [71 Cal.Rptr. 546], each of which might appear on the surface to be in conflict with the conclusions drawn herein. Both of these cases involved the use of pre-printed form warrants. In each case the facts were essentially the same. Sufficient affidavits were sworn and warrants were issued. The pre-printed portions of the warrant contained alternate language for "daytime" only or "day or night" authorizations. In both cases the magistrate neglected to strike out the inapplicable language. In both cases the searches were conducted at night and in both cases the court held that the evidence should be excluded. The court's basis for this holding was best expressed in *Mills*: "[T]he mandatory requirement that the magistrate exercise his discretion by inserting a direction has not been met. Because the warrant was not made to conform to either of the options open to the magistrate, this court cannot determine whether or not he exercised the discretion vested in him by the statute [Pen. Code, § 1533]. . . . [T]he warrant here was issued in such form as reasonably to suggest an inference that the question of time of search was overlooked." (*People* v. *Mills, supra,* at p. 422.) In the case at bar, there is nothing to suggest that the magistrate failed to exercise independent judicial discretion in granting the warrant. There is therefore no reason to inquire into the soundness of the *Mills* and *Call* cases as they are clearly distinguishable from the case now under consideration.

duct, not deficient police draftsmanship in the preparation of affidavits." (P. 561.)

In *People* v. *Grossman* (1971) 19 Cal.App.3d 8 [96 Cal.Rptr. 437], the court concluded that "If the description of the premises to be searched is ambiguous, the ambiguity may be resolved by reference to the affidavits supporting the warrant. [Citations.]" (P. 12.) A similar result was reached in *People* v. *Estrada* (1965) 234 Cal.App.2d 136 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307].

In view of the foregoing, it seems settled that the mere fact that there is on the face of a warrant some error, omission or ambiguity, is not sufficient to defeat the validity of the warrant. The cases seem generally agreed that reference may be made to the underlying affidavit when the warrant carries some defect upon its face.

In upholding an order denying defendant's motion to suppress evidence seized under the authority of an allegedly defective search warrant, Justice Compton, writing for the Court of Appeal, Second District, made certain observations which we feel have application to the instant case: "The entire thrust of the exclusionary rule and the cases which have applied it is to encourage the use of search warrants by law enforcement officials. . . . The speed with which law enforcement is often required to act, especially when dealing with the furtive and transitory activities of persons who traffic in narcotics, demands that the courts make every effort to assist law enforcement in complying with the edicts that the courts themselves have issued." (*Alvidres* v. *Superior Court* (1970) 12 Cal.App.3d 575, 581 [90 Cal.Rptr. 682].)

It is obvious that the error which occurred in the preparation of the search warrant here involved was purely clerical in nature. Clearly, the issuing magistrate intended to direct a search for dangerous drugs and only by reason of clerical error did he fail to insert such direction on the face of the warrant. While we do not condone carelessness on the part of the magistrate in failing to note such error, we conclude that the defect did not in any way substantially prejudice the rights of the defendant.

The order dismissing the information is reversed.

Taylor, P. J., and Kane, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 20, 1973.