[Civ. No. 34917. First Dist., Div. One. Aug. 23, 1974.]

RICHARD PAUL STERNBERG, Petitioner, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

William C. Harrison for Petitioner.

No appearance for Respondent.

*Evelle J. Younger*, Attorney General, *Jack R. Winkler*, Chief Assistant Attorney General, *Edward P. O'Brien*, Assistant Attorney General, *Robert R. Granucci* and *Ronald E. Niver*, Deputy Attorneys General, for Real Party in Interest.

## Opinion

**SIMS, J.**—Petitioner seeks a writ, under the provisions of subdivision (i) of section 1538.5 of the Penal Code, commanding the trial court to grant his motion for the return of property and for the suppression of evidence seized under the authority of a purported search warrant which the magistrate admittedly forgot to sign but delivered to the levying officers after reviewing, approving and signing the affidavit offered in support of the issuance of the warrant. He contends the unsigned warrant conferred no authority for resulting searches and seizures, and that therefore the allegedly stolen property seized and listed on the return to the purported warrant should be returned to him or at least be suppressed since the searches and seizures were unreasonable because the warrant was insufficient on its face, and the failure to suppress the evidence violates petitioner's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

An alternative writ of mandate was issued, and, the People having made return thereto on behalf of themselves and the respondent court, the matter was regularly submitted by the parties without oral argument. It is concluded that on the totality of the circumstances the failure of the magistrate to sign the warrant did not render the search so constitutionally invalid that it could not be cured by his subsequent signing of the warrant when it was first discovered that he had neglected to do so; and, alternatively, that insofar as the search and seizure cannot be justified under the warrant, it would be improper to exclude the evidence seized because under the circumstances of this case none of the purposes of the exclusionary rule would be promoted by its application.

The record in this case consists of testimony taken before the issuing magistrate at hearings on a motion to suppress in the municipal court, and the record, including the declaration of the magistrate which had been introduced in evidence in the municipal court, compiled on a similar motion in the superior court,[1] interposed by the petitioner after his prior motion

---

[1]The motion in the superior court was made upon the following grounds: ". . . that the Search and Seizure were pursuant to a warrant and unreasonable because the warrant was insufficient on its face in that it had not been signed by a magistrate, the property seized is not that described in the warrant in that there was not probable cause for the issuance of the warrant and the method of execution of the warrant violated the federal or state constitutional standards."

At the hearing on the motion the deputy district attorney announced that in order to avoid summoning witnesses to testify with regard to further grounds of challenge, the parties wanted the court to first resolve the issue of the unsigned search warrant. The court acknowledged, "That's issue number one," but before petitioner's attorney

had been denied and he had waived a preliminary examination on an information which charged him with five counts of receiving stolen property in violation of section 496 of the Penal Code, and one count of possession of marijuana in violation of section 11357 of the Health and Safety Code. The following facts appear.

At approximately 8 a.m. on September 19, 1973, two officers of the Vallejo Police Department accompanied by a deputy district attorney came to the home of the magistrate to obtain a search warrant. The record does not contain a copy of the affidavit, but the testimony taken at the motion before the magistrate indicates that it set forth information received by the police from a reliable informant which indicated that petitioner had purchased and held property which had been stolen in various burglaries. Following the receipt of the information, an affidavit and search warrant were prepared with the assistance of the deputy district attorney and presented to the judge.

One of the officers swore to the affidavit, which was erroneously dated September 18, 1973, and signed it in the presence of the magistrate, who thereupon added his signature. The magistrate read the affidavit in the presence of the three applicants and found there existed probable cause for the issuance of a search warrant. On reading the affidavit the magistrate determined the identity of the accused petitioner, and that among the premises mentioned were those known to the magistrate as the barber shop which he visited as a patron of petitioner. The naming of those premises and the petitioner in the affidavit was a surprise and shock to the magistrate, and because of his shock and surprise he inadvertently failed and neglected to place his signature upon the search warrant. He orally authorized the officers to make a search and returned to them the unsigned warrant which purported to authorize a search of three designated premises, one a garage,

---

gave any indication of his position and without any ruling by the court the parties launched into explanation and argument on the first ground.

A week later at the continued hearing when the court announced its intention to deny the motion, the attorney for petitioner announced, ". . . we are going to have to set a new trial date anyhow because there will be writs of prohibition and we will have to appeal the order, should the Court make that order we may wish to have the hearing on the further grounds that were set forth in the 1538.5 motion. Now, I don't know what the theory or position of the District Attorney is in that regard." The prosecutor answered, ". . . I thought we submitted the transcript and have gone into this at the 1538 in the lower court." The parties then agreed that the existing trial date should be vacated and the matter should be continued until May 29, 1973 to set a date for trial. In the absence of any request for further hearing on the remaining grounds, or any further reservation of the right to urge those grounds, they may be deemed abandoned. The courts do not favor piecemeal presentation and review of interlocutory orders.

and three described automobiles for 28 items of personal property as stolen property.

The officers took the search warrant, fully believing it had been signed, and, accompanied by officers from two neighboring counties awaited petitioner as he came to his barber shop. The officers, without having discovered the defect, exhibited the warrant to the petitioner when he arrived at his place of business. There is nothing in the record to indicate that at that time the petitioner or anyone else directed the officers' attention to the fact that the warrant was unsigned. It is clear that the petitioner made no objection. The officers proceeded to execute the warrant. Although none of the listed items were found, some 42 items identified as reported stolen property were seized along with some marijuana.

The officers then proceeded to a residence address and exhibited the warrant to the occupant. The officers still had no cause to believe the warrant was unsigned, and no one directed their attention to the defect. The occupant was asked to produce personal property which had been left at the premises by the petitioner. At the officers' request she produced 18 items which she believed were stolen property. A subsequent search of the unoccupied garage revealed the only item of the listed 28 that was actually recovered by the officers. Other items were taken from two of the three vehicles. The record reveals that other searches were conducted at petitioner's residence in Napa County and at a location in Contra Costa County which disclosed other items on the original list. Those searches, however, were not under the defective warrant attacked in these proceedings and are not involved.

The absence of the magistrate's signature from the warrant was first discovered after the searches had been completed when the officers sought to secure copies of the warrant. That afternoon one of the officers sought out the magistrate, who was sitting on assignment in Napa County. He advised him that the warrant had been executed and told him of his failure to sign the warrant. At about 2:15 the magistrate signed the warrant, and inserted "8:15" and struck "p.m." to indicate the time of issuance as 8:15 a.m.

## I

Penal Code section 1523 defines a search warrant as follows: "A search warrant is an order in writing, in the name of the people, *signed by a magistrate,* directed to a peace-officer, commanding him to search for personal property, and bring it before the magistrate." (Italics added.)

Subdivision (a)[2] of section 1528 provides, "If the magistrate is thereupon satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, he must issue a search warrant, *signed by him* with his name of office, to a peace officer in his county, commanding him forthwith to search the person or place named, for the property or things specified, and to retain such property or things in his custody subject to order of the court as provided by Section 1536." (Italics added.) Similarly section 1529 in prescribing the form of warrant concludes with an example of the place for the signature of the magistrate with his name of office.

In *Bowyer* v. *Superior Court* (1974) 37 Cal.App.3d 151 [112 Cal.Rptr. 266], the petitioner attacked a search purportedly conducted under authorization granted under subdivision (b) of section 1528 (see fn. 2 above). The facts disclosed that the magistrate took an oral statement under oath which complied with the provisions of subdivision (b) of section 1526, and authorized and ordered the affiant to affix the magistrate's name to a search warrant to be filed with the court. No such warrant was prepared or so signed prior to the search. The day following the search the magistrate himself signed a form of search warrant and wrote "Dated April 23, 1973 nunc pro tunc as of April 22, 1973." In issuing a peremptory writ for the suppression of such evidence as was seized under the authority of the alleged telephonic search warrant, the court made the following observations:

"The language of sections 1523 and 1528, relative to the warrant 'commanding' the addressed peace officer to act, is couched in prospective terms: both sections thus indicate that the officer is authorized to act pursuant to the warrant only *after* it exists in writing (§§ 1523, 1528) and (1) has been 'signed' by the magistrate (§ 1523; § 1528, subd. (a)) or

---

[2]Subdivision (b) of section 1528 provides: "The magistrate may orally authorize a peace officer to sign the magistrate's name on a duplicate original warrant. A duplicate original warrant shall be deemed to be a search warrant for the purposes of this chapter, and it shall be returned to the magistrate as provided for in Section 1537. In such cases, the magistrate shall enter on the face of the original warrant the exact time of the issuance of the warrant and shall sign and file the original warrant and the duplicate original warrant with the clerk of the court as provided for in Section 1541."

It was stipulated in the municipal court, and noted in the superior court, that in inadvertently failing to sign the warrant the magistrate was in no sense purporting to orally authorize any of the officers to insert the magistrate's name on the warrant. The provisions of subdivision (b) are only tangentially of importance as they enlighten the principal precedent upon which petitioner relies, and insofar as they demonstrate what might have occurred had the error been discovered earlier. (See text below.)

(2) his name has been 'signed' to a 'duplicate original' thereof pursuant to his oral authorization. (§ 1528, subd. (b).) The prospective language imports that a written instrument in one form or the other, must be in existence before a search may be conducted." (37 Cal.App.3d at p. 163, fn. omitted.)

It rejected the Attorney General's argument that the recorded and transcribed transcript of the oral statement taken by the magistrate under the provisions of subdivision (b) of section 1526 lent sufficient safeguards to the search "because the procedure followed was not expressly authorized by law and violated the apparent statutory requirements that a search warrant must be in one or another of the authorized *written* forms before a valid search can be conducted." (*Id.*, p. 164.) The court pointed out, "Because the proceeding by a search warrant is a 'drastic one,' whose abuse led to the adoption of the Fourth Amendment itself, legislation regulating the process must be liberally construed in favor of the individual affected. (*Sgro* v. *United States* (1932) 287 U.S. 206, 210 . . . ; *People* v. *Mills* (1967) 251 Cal.App.2d 420, 422 . . .) '. . . [E]very constitutional and statutory requirement must be fully met, including all formalities required by statute, before a valid search warrant may issue.' (79 C.J.S., Searches and Seizures, § 71. Cf. 68 Am.Jur.2d, Searches and Seizures, § 73.)" (*Id.*) The court also reviewed the history of the enactment of the subdivisions added to sections 1526 and 1528 in 1970 and concluded: " 'Oral authorization to search' having been expressly rejected by the Legislature, we decline to sanction it here." (*Id.*, p. 165.)

*Bowyer* is not controlling in this case for the reason that in that case there was never any action on the magistrate's authorization. No written process, signed or unsigned, was in existence at the time the search and seizures were made.[3] Nor do the cases concerning the time of day (§ 1533), or the

---

[3]If the matter were to be reviewed originally one might question the result in *Bowyer*. As indicated in the text below, in the absence of a challenge to the search, which could have led to a violation of the challenger's rights, or, more probably, to the preparation of the instrument authorized by the magistrate, the delayed filing of the formal warrant caused no injury. The evidence to support the search warrant was exposed to the scrutiny of a magistrate. The court was not requested to lend its aid to some "dirty business." There is, however, some justification for insisting that some writing be in existence to prevent unwarranted conflict in the event the search is contemporaneously challenged. Yet one may question whether exclusion is the proper remedy in the absence of such a conflict. Once the statement was recorded and transcribed and the magistrate had authorized the preparation and signing of the warrant there was little to be gained by failure to do so, and the error in *Bowyer* was undoubtedly occasioned by ignorance of procedure, not by a studied violation of the occupant's rights.

days within which (§ 1534) a warrant may be executed, light an unerring path to control the facts of this case.

In the former cases there is a requirement of strict compliance with the authority conferred by law. In *Sgro* v. *United States* (1932) 287 U.S. 206 [77 L.Ed. 260, 53 S.Ct. 138, 85 A.L.R. 108], the court struck down a search and seizure made after the 10 days in which the warrant was directed to be executed had expired. The court observed with respect to the failure to execute the warrant within the time prescribed by federal statute. "While the statute does not fix the time within which proof of probable cause must be taken by the judge or commissioner, it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case. It is in the light of the requirement that probable cause must properly appear when the warrant issues that we must read the provision which in explicit terms makes a warrant void unless executed within ten days after its date. That period marks the permitted duration of the proceeding in which the warrant is issued. There is no provision which authorizes the commissioner to extend its life or to revive it." (287 U.S. at pp. 210-211 [77 L.Ed. at p. 263]. See also Pen. Code, § 1534; *People* v. *Sanchez* (1972) 24 Cal.App.3d 664, 680-688 [101 Cal.Rptr. 193] [overruled on other grounds *People* v. *Martin* (1973) 9 Cal.3d 687, 694-695 [108 Cal. Rptr. 809, 511 P.2d 1161)]; and *Cave* v. *Superior Court* (1968) 267 Cal. App.2d 517, 519-524 [73 Cal.Rptr. 167].) Such cases reflect a requirement, reasonably imposed, that the evidence of probable cause be related to a point in time in which it is probable that personal property once believed to be present has not been removed.

In the nighttime search cases the courts have been concerned with the magistrate's failure to exercise his discretion to authorize a nighttime search when he uses a form, similar to that prescribed in the form of warrant prescribed in section 1529, reading ". . . you are, therefore, commanded to make immediate search in the daytime (or at any time of the day or night, good cause being shown therefor) . . ." without any deletions. (See *Rogers* v. *Superior Court* (1973) 35 Cal.App.3d 716, 719-720 [111 Cal.Rptr. 9]; *Powelson* v. *Superior Court* (1970) 9 Cal.App.3d 357, 362-363 [88 Cal.Rptr. 8]; *Call* v. *Superior Court* (1968) 266 Cal. App.2d 163, 164 [71 Cal.Rptr. 546]; and *People* v. *Mills* (1967) 251 Cal.App.2d 420, 421-423 [59 Cal.Rptr. 489]. Cf. *Tidwell* v. *Superior Court* (1971) 17 Cal.App.3d 780, 786-787 [95 Cal.Rptr. 213].) In *Rogers* v. *Superior Court, supra,* the court summarized as follows: ". . . the legis-

lative purpose behind section 1533 is two-fold: (1) to require the magistrate to consider and determine whether he should exercise a discretion which authorizes a search peculiarly intrusive on the householder and especially dangerous to the officers; and (2) to enable the householder to know, from the face of the papers served on him, that the intrusion had, in fact, been authorized by a magistrate and that it was not the result of a mere whim or zealousness of the police." (35 Cal.App.3d at p. 720.)

In *Rogers* the trial court had received testimony from the magistrate, who was blind, as to his intention with reference to the time of search. The reviewing court examined this testimony and concluded: "The magistrate's testimony . . . is not sufficient to support a finding that he had definitely and positively directed that the warrant issue in a form which would authorize a nighttime search. Taken as a whole that testimony supports only a finding that he was *willing* that the warrant be served 'forthwith, which would have meant nighttime' but that ultimately left the choice to the applicant and the prosecutor. As *Call* and *Mills* make clear, that is not enough to validate a nighttime search." (*Id.*) The court further observed, "Since the warrant did not lawfully authorize the search made, the 1538.5 motion should have been granted insofar as the People relied on the warrant." (*Id.*)

In *Powelson* the trial court also received testimony from the magistrate. He stated "that he, in fact, intended to authorize nighttime service of the warrants and that he expressed this intention by *not* deleting 'at any time of the day or night good cause being shown therefor.' " (9 Cal.App.3d at p. 363.) The court pointed out, as noted in *Rogers* (35 Cal.App.3d at pp. 719-720), that the failure to delete any part of a form carrying alternative directions, does not satisfy the provisions of section 1533 which requires the magistrate to "insert a direction in the warrant that it may be served at anytime of the day or night," and suggests to anyone reading the warrant that the question of the time of search was overlooked (9 Cal. App.3d at p. 362).

In this case the testimony of the magistrate was not as equivocal as in *Rogers*. It is clear that he exercised his discretion, reviewed the evidence in the affidavit and found probable cause for the issuance of a search warrant. (See *Yuma County Attorney* v. *McGuire* (1973) 109 Ariz. 471, 471-472 [512 P.2d 14, 15-16].) The resulting search was therefore made after compliance with the constitutional requirements fully expostulated in *Johnson* v. *United States* (1948) 333 U.S. 10 [92 L.Ed. 436, 68 S.Ct. 367], where the opinion of the court recites, "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law

enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue. a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." (333 U.S. at pp. 13-14, fns. omitted [92 L.Ed. at pp. 439-440].· See also *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 449 [29 L.Ed.2d 564, 572-573, 91 S.Ct. 2022]; *United States* v. *Ventresca* (1965) 380 U.S. 102, 106 [13 L.Ed.2d 684, 687-688, 85 S.Ct. 741]; *Aguilar* v. *Texas* (1964) 378 U.S. 108, 111 [12 L.Ed.2d 723, 726-727, 84 S.Ct. 1509]; and *Halpin* v. *Superior Court* (1972) 6 Cal.3d 885, 890 [101 Cal.Rptr. 375, 495 P.2d 1295] [cert. den. (1972) 409 U.S. 982 (34 L.Ed.2d 246, 93 S.Ct. 318)]].)

Here, as in the case of a nighttime search, the second purpose of the warrant is to let the householder know that the intrusion has been authorized by a magistrate. The lack of the signature of the magistrate whether made by him (§ 1528, subd. (a)), or by someone else under his authority (§ 1528, subd. (b)), would appear to be fatal to the accomplishment of that purpose. If petitioner, or the occupant of the premises where he allegedly had stored stolen goods, had challenged the warrant, any further attempt to conduct a legal search and seizure under its authority would have been forestalled. The remedy, however, would have been obvious. The officers could have dispatched one of their number to secure the magistrate's signature, or, having filed with him a sufficient affidavit, it might have been possible to secure authorization to insert his name under the duplicate original warrant procedure authorized by subdivision (b) of section 1528 (see fn. 2 above). (See *Commonwealth* v. *Wilbur* (1967) 353 Mass. 376, 381 [231 N.E.2d 919, 922] [cert. den. (1968) 390 U.S. 1010 (20 L.Ed.2d 161, 88 S.Ct. 1260)].) Here there was no such challenge and no such action. The question remains, may the process be amended to show the true facts when no one has been misled by the inadvertent failure of the magistrate to sign?

The encyclopedias note that there is a conflict in the decisions as to whether the failure to properly sign legal process renders any action taken thereunder void, or whether the process may be amended to show the true situation (See 62 Am.Jur.2d, Process, § 9, pp. 792-793; and 72 C.J.S.,

Process, § 19, subd. a, pp. 1014-1015.) In this state the conflict was recognized, and it was determined that process issued in the name of a clerk whose term of office had expired was defective and that action taken thereunder could not be cured by amendment. (See *O'Donnell* v. *Merguire* (1901) 131 Cal. 527, 529-530 [63 P. 847].) A more liberal attitude was taken in *Hager* v. *Astorg* (1904) 145 Cal. 548 [79 P. 68], where the court held that the failure to affix a seal to process was a defect which could be cured by an amendment which would render action taken thereunder immune from collateral attack. (See 145 Cal. at pp. 552-554.) In similar vein it has been recognized that technical defects will not invalidate the oath and affirmation on the affidavit for a search warrant. (See *Clifton* v. *Superior Court* (1970) 7 Cal.App.3d 245, 254-255 [86 Cal.Rptr. 612]; but cf. *Charney* v. *Superior Court* (1972) 27 Cal.App.3d 888, 891-892 [104 Cal.Rptr. 213].)

It has also been recognized that when there can be no objection to a nighttime search because the occupants have been incarcerated it is ridiculous to invalidate a search and seizure under a warrant with a technical defect. (See *Tidwell* v. *Superior Court, supra,* 17 Cal.App.3d 780, 787.) Such a result is consistent with the principle that the courts should adopt a common sense attitude with respect to the interpretation of affidavits submitted to establish probable cause for the issuance of search warrants. (See *United States* v. *Ventresca, supra,* 380 U.S. 102, 108-109 and 111-112 [13 L.E.2d 684, 688-689 and 690-691]; *People* v. *Senkir* (1972) 26 Cal.App.3d 411, 416 [103 Cal.Rptr. 138]; *Commonwealth* v. *Wilbur, supra,* 353 Mass. 376, 381; and *People* v. *Harrison* (1967) 83 Ill.App.2d 90, 92-95 [226 N.E.2d 418, 419-420].)

It is, therefore, concluded that under the peculiar circumstances of this case any insufficiency on the face of the warrant, because the magistrate inadvertently failed to sign it, was cured by his affixing his signature at the earliest opportunity after such omission was discovered and prior to any challenge to the warrant. If there is any danger that the police will thereby be encouraged to use blank warrants to conduct searches and seizures in the hopes that they can subsequently be signed, if challenged, such cases may be dealt with as they arise. (See *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 735-739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R. 3d 1316].) The fact remains that here there was clear and convincing evidence that the magistrate had determined that there was probable cause and had authorized the search and seizure. No one's position was changed in reliance on the omission of the signature and the defect was promptly

cured. (See *Yuma County Attorney* v. *McGuire, supra,* 109 Ariz. 471, 471-472.)

## II

█ Even if the warrant be deemed insufficient on its face, and uncorrectable after the actual search and seizure, a question remains as to whether the evidence seized by the officers, who acted in good faith without actual knowledge of the defect, should be suppressed. (See *People* v. *Moore* (1973) 31 Cal.App.3d 919, 922-927 [107 Cal.Rptr. 590]; *People* v. *Gurley* (1972) 23 Cal.App.3d 536, 552-554 [100 Cal.Rptr. 407]; and *Hart* v. *Superior Court* (1971) 21 Cal.App.3d 496, 499-504 [98 Cal.Rptr. 565].)

Resolution of the case on the issue of whether the warrant was valid on its face may be a deceiving oversimplification which yields to rote rather than reason, exalts form over substance, and gives credence to Dickens' Mr. Bumble's conclusions about the law.[4] It should be remembered that at common law "if the tendered evidence was pertinent, the method of obtaining it was unimportant." (*Olmstead* v. *United States* (1928) 277 U.S. 438, 462-463 and 466-469 [172 L.Ed. 944, 949-950 and 951-952, 48 S.Ct. 564, 66 A.L.R. 376] [overruled *Katz* v. *United States* (1967) 389 U.S. 347, 352-353 (19 L.Ed.2d 576, 582-583, 88 S.Ct. 507)]. See also *Weeks* v. *United States* (1914) 232 U.S. 383, 394-396 [58 L.Ed. 652, 656-657, 34 S.Ct. 341]; *Elkins* v. *United States* (1960) 364 U.S. 206, 216-217, 218-221 and Appendix 224-232 [4 L.Ed.2d 1669, 1676-1677, 1678-1679 and 1681-1687, 80 S.Ct. 1437]; and *People* v. *Cahan* (1955) 44 Cal.2d 434, 439-441 [282 P.2d 905, 50 A.L.R.2d 513].)

The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." As pointed out in *Cahan*, "The constitutional provisions themselves do not expressly answer the question whether evidence obtained in violation thereof is admissible in criminal actions." (44 Cal.2d at p. 439.) █ The courts in inter-

---

[4]" 'If the law supposes that,' said Mr. Bumble . . . 'the law is a ass, a idiot.' " Charles Dickens, Oliver Twist, chapter 51. (Bartlett, Familiar Quotations (11th ed. 1937, p. 494.)

preting the Constitution have established that evidence obtained by an illegal search and seizure should be excluded. (*Mapp* v. *Ohio* (1961) 367 U.S. 643, 655 [6 L.Ed.2d 1081, 1089-1090, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *Elkins* v. *United States, supra,* 364 U.S. 206, 223-224 [4 L.Ed.2d 1669, 1680-1681]; *Weeks* v. *United States, supra,* 232 U.S. 383, 398 [58 L.Ed. 652, 657]; and *People* v. *Cahan, supra,* 44 Cal.2d 434, 445.) The ruling stands on two postulates: First, it is ". . . calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." (*Elkins* v. *United States, supra,* 364 U.S. 206, 217 and 217-222 [4 L.Ed.2d 1669, 1677 and 1677-1680]. See also *Mapp* v. *Ohio, supra,* 367 U.S. 643, 651-657 [6 L.Ed.2d 1081, 1087-1091]; *Weeks* v. *United States, supra,* 232 U.S. 383, 393-394 [58 L.Ed. 652, 655-656]; and *People* v. *Cahan, supra,* 44 Cal.2d 434, 441 and 447-448.) Secondly, ". . . there is another consideration—the imperative of judicial integrity." (*Elkins* v. *United States, supra,* 364 U.S. 206, 222 and 222-223 [4 L.Ed.2d 1669, 1680 and 1680-1681]. See also *Mapp* v. *Ohio, supra,* 367 U.S. 643, 659 [6 L.Ed.2d 1081, 1092]; and *People* v. *Cahan, supra,* 44 Cal.2d 434, 445-446.)

The latter principle was phrased in oft-quoted words by two dissenting justices in *Olmstead* v. *United States, supra.* Holmes, J. observed: ". . . no distinction can be taken between the Government as prosecutor and the Government as judge. If the existing code does not permit district attorneys to have a hand in such dirty business it does not permit the judge to allow such iniquities to succeed." (277 U.S. at p. 470 [72 L.Ed. at p. 953].) In like vein, Brandeis, J. elaborated, "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face." (*Id.,* at p. 485 [72 L.Ed. at pp. 959-960].)

Tested by the foregoing standards what conduct is to be deterred here? Has the trial court in refusing to suppress the evidence taken a hand in

a dirty business or engaged in lawbreaking? ▮▮▮ The obvious answer is that it has looked at the totality of the circumstances and ascertained that the purposes of the exclusionary rule will not be served by its application to the technically defective search which was effected in this case. In *People* v. *Moore, supra,* the court found that the warrant was defective on its face because it contained printed references to narcotics when in fact it was issued on an affidavit which showed probable cause to search for restricted drugs. The court after examining the purposes of the exclusionary rule, as they have been outlined above, concluded: "It is obvious that the error which occurred in the preparation of the search warrant here involved was purely clerical in nature. Clearly, the issuing magistrate intended to direct a search for dangerous drugs and only by reason of clerical error did he fail to insert such direction on the face of the warrant. While we do not condone carelessness on the part of the magistrate in failing to note such error, we conclude that the defect did not in any way substantially prejudice the rights of the defendant." (31 Cal.App.3d at p. 927.) "When the reason of a rule ceases, so should the rule itself." (Civ. Code, § 3510.)

So here under the peculiar facts established in this case there is no constitutional requirement that the seized evidence should be excluded. To do so would create an unwarranted suppression of the truth.

The alternative writ is discharged and the petition is denied.

Molinari, P. J., and Elkington, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied October 10, 1974.