[Civ. No. 3374. Fifth Dist. May 25, 1977.]

KENNETH WARREN THOMPSON, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Hubler, Burford, Moran & Quirk and John P. Moran for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and W. Scott Thorpe, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**FRANSON, J.**—Petitioner was charged by information with possession of amphetamines for sale and possession of chicken fighting paraphernalia, which had been seized at his residence pursuant to a search warrant. Asserting the constitutional invalidity of the warrant, petitioner moved to suppress the evidence and to dismiss the information. His motions were denied. He seeks extraordinary relief from this court.

### FACTS

On October 27, 1976, at approximately 4 p.m. Officers Hover and Anderson of the Tulare County Sheriff's office served a search warrant on petitioner at his residence at 984 South Wisconsin near Porterville.

The warrant was based on an affidavit by Officer Hover containing information from two reliable informants that petitioner was in possession of stolen handguns.

The search warrant contained the following provisions:

"PROOF, by affidavit, having this day made before me . . . that the crime of 496 P.C., Possession of Stolen Property, to-wit: Handguns has (probably) been committed; . . .

"YOU ARE THEREFORE COMMANDED . . . to make immediate search of [petitioner and his residence] . . . and to confiscate *stolen property*, illegally in the possession of the [petitioner].

"Also to seize articles of personal property tending to establish the identity of persons in control of the premises or storage areas where *stolen property* is found, . . . including, but not limited to utility company receipts, rent receipts, and cancelled mail envelopes and keys and that these items together with *stolen property*, that may be found in the premises and which may tend to prove the residence of the [petitioner]." (Italics added.) When Officers Hover and Anderson arrived at petitioner's residence, they presented their identification, served petitioner with a copy of the search warrant and commenced the search.

The officers began their search in the northeast bedroom. Officer Hover found a handgun in the nightstand next to the bed. Petitioner also produced a shotgun and two rifles from a closet in the bedroom.

Detective Anderson started his search along the north wall of the bedroom. He examined some stereo equipment stacked there. The stereo equipment consisted of multi-band radios and speakers and was moved by Anderson in order to take down the serial numbers on the back of the equipment.[1]

Officer Hover then searched a safe in the bedroom. The safe was large enough to contain a handgun. Inside the safe was found a quantity of marijuana. The safe contained a separate locked compartment which was also large enough to contain a handgun. Without opening the

---

[1]Officer Anderson also found some eight-track tape decks and other stereo equipment in the workshop and kitchen. None of the stereo equipment was seized but all of it was moved to take down the serial numbers.

compartment, Officer Hover could see about three inches into it and discerned the presence of some white pills. Petitioner was asked for the key to the compartment, but he claimed not to have it. Hover said they were going to open the compartment with or without the key. Petitioner then had Mrs. Griffin, who occupied the residence with him, bring the key. Inside the compartment the officers found approximately 1,400 amphetamine tablets.

Also found in the safe was a box large enough to contain a handgun. Inside the box was found chicken fighting paraphernalia.

Officer Anderson found marijuana seeds, burned marijuana cigarettes and more amphetamines in the nightstand in the bedroom. Also found was a metal Sucrets box which when opened was found to contain two syringes and hypodermic needles. The Sucrets box was not large enough to contain a handgun. All of the above items were seized.

The officers also found and seized a switchblade knife from the workshop. Finally, medical and utility bills were taken from the dresser drawer in the bedroom, these items tending to establish the identity of petitioner as the person in control of the premises.

At the hearing on the motion to suppress, it was determined that Officer Hover had dictated the search warrant. The following exchange then took place:

"Q. [by deputy district attorney] Okay. Now, I note that the document [i.e., the search warrant] starts out by alleging that [petitioner] is suspected of being in the receipt of stolen property, that is handguns. *I notice down in the order portion of the warrant, it orders the confiscation of stolen property, without further qualification.* [Italics added.]

"A. [by Officer Hover] Yes.

"Q. Was that the way you dictated that?

"A. *Yes, it is.*" (Italics added.)

Officer Hover also gave the following testimony:

"Q. [by petitioner's counsel] Now, did I understand from your testimony, Officer Hover, that after you seized the firearms, and the

contraband from the safe, that you searched the rest of the premises. Is that right?

"A. That's correct.

"Q. And that was to try to see if you could find contraband?

"A. That's correct.

"Q. By contraband, you mean amphetamines, or marijuana or narcotics?

"A. By contraband, I mean stolen handguns, *and or anything else that was. More narcotics, if there was any, sure.*" (Italics added.)

On March 3, 1977, Judge Ballantyne ruled on petitioner's motions to suppress and dismiss. The motion to suppress was granted as to the hypodermic needles seized from the Sucrets box. The box was found to be too small to contain a handgun. As to all other evidence, the motion to suppress was denied.[2]

## DISCUSSION

Both the Fourth Amendment to the United States Constitution and article I, section 13, of the California Constitution require that a search warrant *particularly describe* the place to be searched and the things to be seized. ■ The requirement of particularity is designed to prevent general exploratory searches which unreasonably interfere with a person's right to privacy. (*Marron* v. *United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74]; *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 249 [118 Cal.Rptr. 166, 529 P.2d 590].)

■ Penal Code section 1529 requires that the property to be searched for be described with "reasonable" particularity. This requirement is satisfied if the description of the property in the warrant "imposes a meaningful restriction upon the objects to be seized" (*Burrows* v.

---

[2]The trial court's rationale in denying the motion to suppress apparently was as follows: the warrant authorized a search for handguns. The amphetamines and chicken fighting equipment were seized in the course of searching for handguns; therefore, the search was valid. However, because the validity of the search depends in the first instance upon the validity of the warrant, we consider the officers' conduct in searching the premises only as it relates to the efficacy of the warrant.

*Superior Court, supra,* 13 Cal.3d at p. 249) so that nothing is to be left to the discretion of the officer. (*Marron* v. *United States, supra,* 275 U.S. at p. 196 [72 L.Ed. at p. 237]; *People* v. *Dumas* (1973) 9 Cal.3d 871, 889 [109 Cal.Rptr. 304, 512 P.2d 1208].)

Whether the description in the warrant of the property to be seized is sufficiently definite is a question of law on which an appellate court makes an independent judgment. (See *Aday* v. *Superior Court* (1961) 55 Cal.2d 789, 795-796 [13 Cal.Rptr. 415, 362 P.2d 47].)

In applying these principles, the courts have found the following descriptions of property in search warrants to be constitutionally insufficient: "[A]ll books, records, accounts and bank statements and cancelled checks of the receipt and disbursement of money" without regard to the persons with whom the transactions had occurred or the dates of the transactions. (*Burrows* v. *Superior Court, supra,* 13 Cal.3d at pp. 241, 249-250.) A listing of numerous documents by general categories, such as "[c]hecks, check stubs . . . and bank statements" followed by "[a]ny and all other records and paraphernalia connected with" the business of the suspect. (*Aday* v. *Superior Court, supra,* 55 Cal.2d at pp. 793, 795-796.) "[C]ertain personal property used as a means of committing a public offense, to-wit, attempted grand larceny." (*People* v. *Mayen* (1922) 188 Cal. 237, 242 [205 P. 435, 24 A.L.R. 1383].) "Evidence of indebtedness" of the suspect, his telephone bills, and "[a]ny papers showing names and addresses of associates." (*Griffin* v. *Superior Court* (1972) 26 Cal.App.3d 672, 692-696 [103 Cal.Rptr. 379].) "[O]ther evidence" (*Stern* v. *Superior Court* (1946) 76 Cal.App.2d 772, 783-784 [174 P.2d 34]). In *Lockridge* v. *Superior Court* (1969) 275 Cal.App.2d 612, 625-626 [80 Cal.Rptr. 223], a warrant which failed to refer to specific items stolen from a jewelry store but only to "merchandise stolen" was held to be invalid for lack of particularity.

The People concede that a general description of "stolen property" standing alone in a warrant would be constitutionally overbroad because it would enable an officer to engage in an unlimited exploratory search of all personal property and papers situated in the described premises. However, the People point out that the introductory paragraph of the instant warrant recites that "PROOF, by affidavit, . . . that the crime of . . . Possession of Stolen Property, to-wit: Handguns has (probably) been committed;" and argue from this language that the omission of the word "handguns" from the command portion of the warrant was merely an oversight causing an ambiguity in the warrant which can be clarified by

reference to the underlying affidavit which provides probable cause to search only for stolen handguns. Stated otherwise, they contend that the affidavit may be used to remedy any uncertainty as to the officer's authority under the warrant.

While the People's argument at first glance is somewhat appealing, nevertheless, upon closer analysis it fails for several reasons:  ■  First, a search warrant which describes the property to be seized in a broad general category is constitutionally invalid notwithstanding the particularity with which the supporting affidavit sets forth the alleged crime. In *Burrows* v. *Superior Court, supra,* 13 Cal.3d 238, the affidavit related probable cause to believe that an attorney had embezzled a particular client's funds. The warrant, however, authorized a search of the attorney's office for "all books, records, account and bank statements and cancelled checks of the receipt and disbursement of money *and* any file or documents referring to [named individuals]." (Italics added.) (13 Cal.3d at p. 241.) In holding the warrant invalid, the Supreme Court did not refer to or use the affidavit to support the overbroad authority granted by the warrant. It simply held that the warrant did not meet the constitutional standards of specificity because it permitted the seizure of all of petitioner's financial records "without regard to the persons with whom the transactions had occurred or the date of transactions." (13 Cal.3d 249-250; cf. *Aday* v. *Superior Court, supra,* 55 Cal.2d at pp. 796-797.) As to the language "any file or documents . . . " relating to the specific clients named in the affidavit, the court also held that the description was too broad to comport with constitutional standards because it would authorize a seizure of files and papers not connected with the alleged embezzlement (13 Cal.3d at pp. 250-251).

The reason for this limitation on the use of the affidavit to save the warrant is obvious: the property to be seized pursuant to the warrant is not within the discretion of the executing officer. As stated in *People* v. *Dumas, supra,* 9 Cal.3d at page 880, "The description in a search warrant must be sufficiently definite that the officer conducting the search 'can with reasonable effort ascertain and identify' [the property to be seized.] [Citation omitted.] Nothing should be left to the discretion of the officer." (See also *Marron* v. *United States, supra,* 275 U.S. at p. 196 [72 L.Ed. at p. 237].) Thus, the scope of the officer's authority is determined from the face of the warrant and not from the affidavit. The cogency of this rule becomes apparent when we consider the fact that the executing officer may not have a copy of the affidavit or even have knowledge of its contents when he serves the warrant. (See Pen. Code, § 1530.)

■ Second, in addition to the requirement of a particular description of the property to be seized, in no event can the description in the warrant be broader than that justified by the supporting affidavit. As stated in *Burrows, supra,* "It is axiomatic that a warrant may not authorize a search broader than the facts supporting its issuance." (13 Cal.3d at p. 250.)

We, therefore, glean from *Burrows, supra,* the general principle that while the facts set forth in the affidavit may be used to fix the parameters of the search authorized by the warrant, the facts in the affidavit cannot be used to cure an impermissibly broad warrant.

■ Our third reason for rejecting the People's argument that the affidavit may be used to remedy any defect in the warrant is that we find no necessary ambiguity in the language of the instant warrant. Viewing the warrant objectively, a reasonable inference arises that because there was probable cause to believe that stolen handguns were on the premises, there was probable cause to believe that other items of stolen property also might be on the premises; hence, the officers were authorized to seize all items of stolen property. Thus, a reasonable officer having access to the warrant either with or without the affidavit could believe that he was authorized to seize any property on the premises which he suspected might be stolen.[3]

The testimony of Officers Hover and Anderson demonstrate that they, in fact, believed that they had the right to conduct a general exploratory search for stolen property. Officer Anderson started his search in the northeast bedroom by examining appellant's stereo equipment—obviously suspecting that it had been stolen. Officer Hover testified that he was looking for "contraband, i.e., stolen handguns, and or anything else that was."

Moreover, the People's contention that the omission of the word "handguns" from the command portion of the affidavit was a mere "clerical error" is refuted by Officer Hover's testimony that the language of the warrant was precisely as he had dictated it. While the magistrate

---

[3] We therefore reject the People's argument that the introductory paragraph of the warrant which recites "PROOF, by affidavit, ... that the crime of ... Possession of Stolen Property, to-wit: Handguns has (probably) been committed;" may modify the command portion of the warrant which provides "YOU ARE THEREFORE COMMANDED . . . to make immediate search of [petitioner and his residence] . . . and to confiscate stolen property, . . . " As explained above, when read together the introductory paragraph and the command paragraph reasonably can be construed to authorize an unlimited search for stolen property. Thus, the language of the introductory paragraph does not necessarily restrict the meaning of the command paragraph.

may have intended to authorize only a search for handguns, such a supposition is conjectural. ■ In exercising the interpretative function of a reviewing court, this court is confined to the language of the warrant; we cannot speculate as to the subjective intent of the magistrate when he signed the warrant.

We recognize that several appellate cases have held that where there is an ambiguity in the warrant as to the persons or place to be searched, the affidavit can be utilized to save the warrant from a finding of invalidity. (*People* v. *Grossman* (1971) 19 Cal.App.3d 8, 12-13 [96 Cal.Rptr. 437]; *People* v. *Moore* (1973) 31 Cal.App.3d 919, 925-927 [107 Cal.Rptr. 590]; *People* v. *Peck* (1974) 38 Cal.App.3d 993, 1000 [113 Cal.Rptr. 806].) However, these cases are distinguishable on two grounds: First, the omission of the descriptive facts in the warrant causing the so-called "ambiguity" was clearly the result of inadvertence or "clerical error." Second, in each case the search pursuant to the warrant did not exceed the scope of the facts alleged in the affidavit. Under these circumstances, the courts were able to declare that the search was, in fact, commensurate with the authority contained in the warrant.

For example, in *Grossman, supra,* while searching defendant's apartment pursuant to a duly issued warrant, deputy sheriffs also searched a storage cabinet in an appurtenant carport area. The cabinet was marked "A," the same as defendant's apartment, and inside was a large quantity of seconal and amphetamines. The affidavit supporting the warrant specifically described the carport as part of the premises to be searched; however, the warrant itself described the premises as "13328 Merkel Avenue, Apartment A . . . multi-unit apartment, upper and lower levels . . . , " and did not specifically include the carport area. The court held that since there was an ambiguity in the warrant as to whether the description "Apartment A" included the appurtenant carport marked "A," the ambiguity could be resolved by reference to the affidavit. The court stated, "Since [the description in the warrant] limits the area of search to apartment A and the appurtenance to that apartment in the form of the carport cabinet expressly identified with it, there is no danger of intrusion upon the rights of persons other than respondent occupying the multiple unit dwelling." (19 Cal.App.3d at pp. 12-13.)

In *People* v. *Moore, supra,* 31 Cal.App.3d 919, a police officer had obtained a warrant for the search of defendant's residence on the basis of an affidavit concerning defendant's alleged possession and sale of "dangerous drugs," but the magistrate had inadvertently used a printed warrant form referring to "narcotics" and "narcotics paraphernalia." The filled in portion of the warrant referred to dangerous drugs and the

search and seizure was conducted by the same police officer who had sworn the affidavit. The police searched for and seized only dangerous drugs. The reviewing court stated, "It is obvious that the error which occurred in the preparation of the search warrant here involved was purely clerical in nature. Clearly, the issuing magistrate intended to direct a search for dangerous drugs and only by reason of clerical error did he fail to insert such direction on the face of the warrant . . . . [W]e conclude that the defect did not in any way substantially prejudice the rights of the defendant." (31 Cal.App.3d at p. 927.)

In *People* v. *Peck, supra,* 38 Cal.App.3d 993, a telephonic search warrant was upheld which authorized a search of an entire duplex while probable cause to search was furnished only as to one-half of it, where the officer's oral statements in support of the warrant made it clear he sought to search only one-half of the duplex. The court emphasized that the accused was not prejudiced by the ambiguity since only one-half of the duplex was in fact searched and the incriminating evidence was found there. The court stated, "since the warrant was issued telephonically, reference may be made to Becker's oral statement which makes it clear he sought only to search the east one-half of the duplex, the residence numbered 1482 Holly Avenue. Appellant was not prejudiced by the ambiguity. Becker searched only one-half of the duplex and all the contraband was found there." (38 Cal.App.3d 1000-1001.)

■ In summary, we hold that in determining the property to be seized pursuant to a warrant, we are confined to the four corners of the warrant. Because the description of the property in the instant warrant is too broad—it would authorize a general search of the premises—the warrant is invalid.

Let a peremptory writ of mandate issue directing the Superior Court of Tulare County to grant petitioner's motion to suppress all of the evidence seized at his residence on October 27, 1976.

Brown (G. A.), P. J., and Hopper, J., concurred.

A petition for a rehearing was denied June 13, 1977, and the petition of the real party in interest for a hearing by the Supreme Court was denied August 5, 1977. Sullivan, J.,* participated therein. Mosk, J., Clark, J., and Richardson, J., were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.