[No. C005629. Third Dist. Jan. 25, 1990.]

THE PEOPLE, Plaintiff and Appellant, v.
RICHARD MICHAEL RUIZ et al., Defendants and Respondents.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Michael J. Weinberger and Ruth M. Saavedra, Deputy Attorneys General, for Plaintiff and Appellant.

Blackmon & Drozd, Dale A. Drozd, Clyde M. Blackmon, Steven Meinrath and John D. Smock for Defendants and Respondents.

**OPINION**

**SPARKS, J.—** ▇ The question in this appeal is whether the good faith exception to the exclusionary rule set forth in *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], applies to a search warrant issued in violation of the rule in *People* v. *Fleming* (1981) 29 Cal.3d

698 [175 Cal.Rptr. 604, 631 P.2d 38], dealing with out-of-county search warrants. In *Fleming,* the court held that California law permits "an out-of-county warrant whenever the magistrate finds probable cause to believe that defendant has committed a crime within the issuing county and consequently will probably face trial in that county." (*Id.* at p. 706.) In this case when the police officers sought an out-of-county search warrant they failed to advise the magistrate that they were investigating crimes which had occurred in the issuing county. Despite that omission, we follow the decision in *People* v. *Dantzler* (1988) 206 Cal.App.3d 289 [253 Cal.Rptr. 526] and hold that the good faith exception applies to such a warrant.

This is a People's appeal (Pen. Code, § 1238, subd. (a)(7)), from an order of dismissal (Pen. Code, § 1385), entered after the trial court granted the defendants' motion to suppress evidence seized pursuant to a search warrant (Pen. Code, § 1538.5). The trial court granted the motion to suppress because the search warrant was issued by a Placer County magistrate for a Sacramento County address, but the affidavit in support of the warrant failed to state specifically that the search related to a crime committed in Placer County. (*People* v. *Fleming, supra,* 29 Cal.3d 698, 707.) On appeal, the People contend that the motion to suppress evidence should have been denied pursuant to the good faith exception of *Leon.* We agree and shall reverse the order of dismissal.

## Factual and Procedural Background

In March 1988, Officer Dennis O'Connor of the Lincoln Police Department was involved in an ongoing investigation for the Placer County narcotics task force. During that month O'Connor and other officers used a confidential informant to make controlled drug purchases in Placer County. On March 21, 1988, the informant successfully purchased drugs from an unknown third party in Roseville, Placer County. After the transaction Officer O'Connor surreptitiously followed the third party to a residence on Summerplace Drive in Citrus Heights, Sacramento County.

About 50 minutes after the first meeting, the informant again met with the third party in Roseville. During the meeting the informant attempted to purchase an "eight ball" of cocaine. The third party told him that he had gone to the home of a person named Rick to obtain the cocaine, but that Rick was holding a kilogram that he could not break up due to a previous arrangement. He asserted, however, that he could provide an eight ball the following day because more cocaine was coming to Rick's house.

After the second meeting between the informant and the third party, Officer O'Connor went to the Placer County District Attorney's office to

prepare an affidavit for a search warrant. O'Connor sought a warrant to search the residence of defendants Richard Michael Ruiz and Mary Robles in Sacramento County. The affidavit in support of the search warrant essentially sets forth the above information together with other information about defendant Ruiz and his residence on Summerplace Drive, Citrus Heights. The affidavit did not, however, specifically state that the transactions involving the confidential informant had taken place in Placer County.

Officer O'Connor took his affidavit to the home of Placer County Superior Court Judge Richard Gilbert. Judge Gilbert considered the affidavit, questioned O'Connor, and had him add certain information to the affidavit by interlineation. He then approved the affidavit and issued a search warrant for defendants' Sacramento County home. The subsequent search of the residence disclosed evidence which led to various drug possession charges being filed against defendants in Sacramento County.

Defendants moved to suppress the evidence against them asserting, among other things, that the search warrant was invalid because it was issued by a Placer County magistrate for a Sacramento County residence. In opposition to the motion the People submitted a declaration from Judge Gilbert. He stated that he was aware of the requirements for the issuance of out-of-county search warrants. Although the affidavit for the search warrant did not specifically state that the events leading up to the request for a warrant occurred in Placer County, Judge Gilbert either assumed or inferred that they had occurred there, based upon his knowledge of Officer O'Connor's employment in that county and past practices.

At the hearing of the motion to suppress evidence Officer O'Connor testified that when he took the affidavit for a search warrant to the jurist's residence Judge Gilbert asked him about the location of the transactions involving the confidential informant. According to O'Connor, he disclosed to the judge the location in Roseville where the transactions occurred. In response defendants submitted another declaration from Judge Gilbert. In this declaration the judge stated that he had no specific recollection whether he discussed the location of the transactions with Officer O'Connor. But he did state that it was his custom and practice not to accept oral briefing in connection with the issuance of a search warrant. In the event he elicits information from an officer, it is his custom and practice to have the officer add the information to the affidavit by interlineation. He believed that if he had been orally told the events occurred in Placer County he would have had O'Connor add this information to the affidavit. The People submitted a declaration from Officer Jones, who accompanied O'Connor to request the warrant. This officer stated that he recalled O'Connor orally advising Judge Gilbert that the transactions occurred in Placer County.

In ruling on the motion to suppress the trial court stated that it found Judge Gilbert to be the more credible witness with respect to the issuance of the warrant. With that finding the court found that the affidavit was facially deficient within the meaning of *People* v. *Fleming, supra,* 29 Cal.3d 698. The court ordered the evidence suppressed. It later dismissed the charges pursuant to Penal Code section 1385 when the People were unable to continue without the suppressed evidence.

## DISCUSSION

■ The resolution of a motion to suppress evidence requires a two-step process. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596 [174 Cal.Rptr. 867, 629 P.2d 961].) First, the court must determine what the facts are with respect to the challenged search. This involves the trial court's traditional fact-finding role: the court must weigh the evidence, judge the credibility of the witnesses, resolve conflicts in the evidence, and determine what inferences should be drawn. (*Ibid.*) Second, the facts so found must then be measured against constitutional requirements. (*Id.* at p. 597.) On appeal from an order granting or denying a motion to suppress, the appellate court must uphold the trial court's factual findings if they are supported by substantial evidence. (*Ibid.*) The determination whether the search and seizure was legal, based upon the facts found by the trial court, is the ultimate responsibility of the appellate court which must exercise its independent judgment on the legal question. (*Ibid.*)

There was only one evidentiary conflict in this case. That was whether Officer O'Connor orally advised Judge Gilbert that the drug transactions identified in the affidavit occurred in Placer County. The trial court, based upon Judge Gilbert's declaration, found that he did not. Since that finding was based upon substantial evidence, we must accept the trial court's resolution of the factual conflict. With that determination made, the factual circumstances presented are relatively straightforward. It appears that Placer County police officers were investigating drug transactions which occurred in Placer County. The investigation led them across the county line to defendants' residence in Sacramento County. They applied to a Placer County magistrate for a search warrant for defendants' Sacramento County residence. In doing so they failed to advise the magistrate that they were investigating drug transactions which had occurred in Placer County. The question is whether, under these circumstances, the evidence seized pursuant to the search warrant must be suppressed.

On appeal the People rely solely upon the so-called good faith rule set out in *United States* v. *Leon, supra,* 468 U.S. 897. In *Leon,* the court considered "whether the Fourth Amendment exclusionary rule should be modified so

as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." (*Id.* at p. 900 [82 L.Ed.2d at p. 684].) The court concluded that the exclusionary rule should be so modified. ■ The Fourth Amendment does not require suppression of evidence obtained in objectively reasonable reliance on a search warrant issued by a neutral magistrate. (*Id.* at p. 922 [82 L.Ed.2d at p. 698].) The fact that a magistrate has issued a warrant normally suffices to establish that a law enforcement officer has acted in good faith in conducting a search. (*Ibid.*) There are four exceptions to this good faith rule: (1) the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) the magistrate wholly abandoned his judicial role; (3) the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) depending upon the circumstances of a particular case, the warrant is so facially deficient, i.e., in failing to particularize the place to be searched or the things to be seized, that officers cannot presume it to be valid. (*Id.* at p. 923 [82 L.Ed. 2d at p. 699].)

Instructive examples of the application of the good faith rule may be set forth. In *Massachusetts* v. *Sheppard* (1984) 468 U.S. 981 [82 L.Ed.2d 737, 104 S.Ct. 3424], a companion case to *Leon*, a murder investigation had focused on the defendant. The investigating officer prepared an affidavit in support of a search warrant for the defendant's residence for evidence relating to the murder. Since it was Sunday, the officer had difficulty finding a warrant application form and he ultimately utilized a standard form for a search warrant for controlled substances. He deleted the subtitle "controlled substances," but failed to delete the reference to controlled substances in the portion of the form which would constitute the warrant application and, when signed, the warrant itself. The officer took the affidavit and warrant form to a judge who, after examining the affidavit, said he would authorize the search. The officer pointed out that he had attempted to adapt a controlled substance warrant form and the judge said that he would make the necessary changes. Although the judge made some changes and signed the warrant, he did not change the substantive portion of the warrant, nor he did not alter the warrant form to incorporate the affidavit. Thus, the warrant continued to authorize an impermissible search for controlled substances. The officers then conducted a search limited in scope to the items in the affidavit relating to the murder. Under these circumstances the United States Supreme Court concluded that although the warrant was constitutionally invalid for failing to particularly describe the items to be seized, the officers acted in good faith reliance on the warrant

and suppression was not required. (468 U.S. at pp. 987-991 [82 L.Ed.2d at pp. 742-745].)

California authorities reflect the same application of the good faith exception. In *People* v. *MacAvoy* (1984) 162 Cal.App.3d 746 [209 Cal.Rptr. 34], for example, police officers had probable cause to justify a search of the defendant's room at a fraternity house. The warrant they obtained, however, would have permitted a search of the entire fraternity. The Court of Appeal found that the warrant was void on its face and that the defect could not be cured by reference to the underlying affidavit. Nevertheless, suppression of the evidence was not required because the officers acted in good faith reliance on the warrant. (*Id.* at pp. 760-765.) Similarly, in *People* v. *Alvarez* (1989) 209 Cal.App.3d 660, at pages 667 and 668 [257 Cal.Rptr. 445], the Court of Appeal applied the good faith rule where the affidavit in support of a search warrant set forth the items to be seized but the warrant wholly failed to describe such items. The good faith rule was also applied in *People* v. *Fortune* (1988) 197 Cal.App.3d 941, at pages 952 and 953 [243 Cal.Rptr. 189], where an officer applied for a telephonic search warrant but failed to comply with the statutory requirement that his statement be recorded and transcribed (Pen. Code, § 1526, subd. (b)), because, although he had attempted to record the statement, the recording was largely inaudible.

The decision in *People* v. *Dantzler, supra,* 206 Cal.App.3d 289, is particularly relevant here. In that case an officer applied to a San Francisco County magistrate for a warrant to search a San Mateo County residence from which drug sales were being made. The affidavit did not refer to any crime committed in San Francisco, nor did it indicate that prosecution for the offenses would be in San Francisco. The court found the warrant to be legally defective, but nevertheless refused to suppress the evidence because the officer acted in good faith reliance on the warrant in conducting the search. (*Id.* at pp. 293-295.) The only difference between *Dantzler* and this case is that here O'Connor was investigating drug transactions which had in fact occurred in Placer County, while in *Dantzler* the opinion does not indicate that transactions had in fact occurred in San Francisco. To the extent that difference is significant this is the stronger case for the application of the good faith rule.

Defendants assert that *Dantzler* is not controlling, and that in any event we should reject its holding. They point out that in *Dantzler* it was stipulated that the officer did not include jurisdictional information in his affidavit because in good faith he did not believe he had a duty to do so. (206 Cal.App.3d at p. 292.) Defendants assert that this stipulation resolved the good faith issue and reduces the remainder of the *Dantzler* opinion to dictum. This is not so. There is a significant difference between a factual

stipulation that an officer acted in subjective good faith in applying for a warrant and the legal conclusion that reliance on a search warrant was objectively reasonable. In the circumstances of *Dantzler,* the stipulation was clearly related to the officer's subjective good faith and not to the legal conclusion that reliance on the warrant was objectively reasonable. Thus, although in *Dantzler* the parties stipulated to the officer's subjective good faith, that is a distinction without a difference.

 In this case it was uncontroverted that the drug transactions Officer O'Connor was investigating had in fact occurred in Placer County. Under these circumstances there could be no conceivable bad faith motive for omitting this information from the affidavit. The only possible effect of the omission was to cast doubt upon what was otherwise a well-supported application for a search warrant. A court cannot rely upon an unreasonable inference; where an inference is to be drawn, it must be a reasonable conclusion from the evidence and cannot be based upon suspicion, imagination, speculation, surmise, conjecture, or guesswork. (*Krause* v. *Apodaca* (1960) 186 Cal.App.2d 413, 418 [9 Cal.Rptr. 10].) To conclude from this record that Officer O'Connor had some bad faith motive or misled the magistrate through reckless disregard of the truth would amount to wholly unwarranted speculation.[1]

Defendants assert that the *Dantzler* court erroneously concluded "that an officer's reliance on a search warrant issued by a magistrate establishes good faith as a matter of law." Defendants misread the *Dantzler* opinion. The *Dantzler* court, in its concluding remarks, said that the officer's reliance on the search warrant was deemed reasonable as a matter of law. (206 Cal.App.3d at p. 295.) In reaching that conclusion, the court cited its previous discussion. (*Ibid.*) In that earlier discussion the court said that a search pursuant to a warrant is to be regarded as reasonable per se unless one of the four exceptions is found applicable. (*Id.* at p. 294.) That is an accurate synopsis of the *Leon* decision. (*United States* v. *Leon, supra,* 468 U.S. at p. 923 [82 L.Ed.2d at pp. 698-699].) And, since the court found none of the exceptions to be applicable it follows that suppression was inappropriate as a matter of law.

---

[1] Defendants assert that Officer O'Connor's knowledge that the transactions under investigation took place in Placer County is not germane to the inquiry. We do not suggest that an officer can rehabilitate a deficient affidavit by later reference to facts known to him but not disclosed to the magistrate who issued the warrant. Nevertheless, the state of officer's knowledge is relevant to a *Leon* inquiry because under *Leon* suppression remains an appropriate remedy where the magistrate has been misled by known or reckless falsity on the part of the affiant. (468 U.S. at p. 923 [82 L.Ed.2d at pp. 698-699].) The evidence of Officer O'Connor's knowledge of the location of the transactions was relevant to establish that he did not act in bad faith in seeking a search warrant from a Placer County magistrate. The question then becomes whether his reliance on the validity of the warrant was objectively reasonable. (See *People* v. *MacAvoy, supra,* 162 Cal.App.3d at p. 763.)

Defendants assert that the *Dantzler* court erred in describing the matter as a "mere legal error" rather than a question of jurisdiction. (206 Cal.App.3d at p. 295.) Whatever terminology is employed, there is a multiplicity of meanings in the use of the word "jurisdiction" under our law. ■ In *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, at page 288 [109 P.2d 942, 132 A.L.R. 715], the court explained: "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. . . . [¶] But in its ordinary usage the phrase 'lack of jurisdiction' is not limited to these fundamental situations. . . . [I]t may be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites."

The consequences of an act beyond the court's jurisdiction in the fundamental sense differ from the consequences of an act in excess of jurisdiction. An act beyond a court's jurisdiction in the fundamental sense is void; it may be set aside at any time and no valid rights can accrue thereunder. In contrast, an act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time. (See *In re Griffin* (1967) 67 Cal.2d 343, 347-348 [62 Cal.Rptr. 1, 431 P.2d 625]; *People* v. *Webb* (1986) 186 Cal.App.3d 401, 411-412 [230 Cal.Rptr. 755]; *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1964) 231 Cal.App.2d 501, 509-510 [42 Cal.Rptr. 58]. See also *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529-530 [165 Cal.Rptr. 851, 612 P.2d 941].)

Even before the decision in *Leon*, the lower federal courts had developed a search warrant rule based upon the distinction between jurisdiction in the fundamental sense and an act in excess of jurisdiction. Rule 41 of the Federal Rules of Criminal Procedure (18 U.S.C.), provides the requisites for the issuance of a federal search warrant. In *United States* v. *Vasser* (9th Cir. 1980) 648 F.2d 507, federal officers applied for a search warrant by means of a tape recorded oral affidavit, a novel approach not authorized by rule 41. The Court of Appeals held that suppression is not required in all cases where the issuance of a search warrant fails to conform to the dictates of rule 41. "Only a 'fundamental' violation of Rule 41 requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards." (*Id.* at p. 510.) Violations of the rule which do not amount to constitutional error are considered "nonfundamental," and nonfundamental violations require suppression only where there is prejudice in the sense that the search would not have occurred or would not have been so abrasive

had the rule been followed, or where there is evidence of intentional and deliberate disregard of the rule. (*Ibid.*)

The fundamental-nonfundamental distinction has been applied in numerous federal decisions both before and after *Leon*. (See *United States* v. *Stefanson* (9th Cir. 1981) 648 F.2d 1231, 1235 [rule applied where the magistrate issued a telephonic search warrant but failed to give the oath before the testimony and failed to record the oath as required by rule 41]; *United States* v. *Johnson* (9th Cir. 1981) 660 F.2d 749, 753 [federal agents obtained a telephonic warrant from a state magistrate rather than a federal magistrate as required for telephonic warrants under rule 41]; *United States* v. *Loyd* (11th Cir. 1983) 721 F.2d 331, 332-333 [federal magistrate failed to certify the accuracy of a transcription of an oral affidavit]; *United States* v. *Ritter* (9th Cir. 1985) 752 F.2d 435, 440-441 [federal agents obtained a telephonic search warrant from a state rather than federal magistrate]; *United States* v. *Comstock* (5th Cir. 1986) 805 F.2d 1194, 1205-1206 [search warrant issued by state court which was not "court of record" as required by rule 41]; *U.S.* v. *Luk* (9th Cir. 1988) 859 F.2d 667, 671-672 [warrant issued to an unauthorized agent].)[2]

We believe the fundamental-nonfundamental distinction is subsumed within the good faith rule of *Leon* by necessary implication. ■ In *Leon*, the high court repeatedly emphasized that the exclusionary rule was designed to protect Fourth Amendment rights through its deterrent effect upon law enforcement officers. It is not a personal constitutional right of the party aggrieved; it was not intended to protect against all illegalities connected with a search; and it was not intended as a sanction against judges and magistrates. (*United States* v. *Leon, supra,* 468 U.S. at pp. 906-913 [82 L.Ed.2d at pp. 687-692].) Consequently, evidence seized pursuant to a warrant should be suppressed "only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." (*Id.* at p. 918 [82 L.Ed.2d at p. 695].) Since the purpose of the exclusionary rule is to deter constitutional violations by law enforcement officers, it follows that application of the rule depends upon a finding of an

---

[2] Although California courts have not expressly adopted the fundamental-nonfundamental rationale of the lower federal courts, our courts have long refused to invalidate search warrants based upon technical irregularities. (See *People* v. *Egan* (1983) 141 Cal.App.3d 798, 802-805 [190 Cal.Rptr. 546] [misplaced jurat did not invalidate the warrant]; *Nunes* v. *Superior Court* (1980) 100 Cal.App.3d 915, 921 [161 Cal.Rptr. 351] [magistrate forgot to endorse for night service but had indicated an intent to do so]; *People* v. *Superior Court (Robinson)* (1977) 75 Cal.App.3d 76, 80 [141 Cal.Rptr. 917] [magistrate forgot to sign the warrant]; *Sternberg* v. *Superior Court* (1974) 41 Cal.App.3d 281, 291 [115 Cal.Rptr. 893] [same]; *People* v. *Moore* (1973) 31 Cal.App.3d 919, 925 [107 Cal.Rptr. 590] [warrant for narcotics when dangerous drugs intended].)

irregularity which is fundamental in the sense that it rises to the level of a constitutional violation.[3]

 In considering the nature of the irregularity here we have no difficulty in concluding that the Fourth Amendment is not directly implicated. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." That amendment does not state or imply a territorial limitation upon the issuance of a search warrant. The Supreme Court has held that a warrant application must be submitted to a neutral and detached magistrate (*Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 449-450 [29 L.Ed.2d 564, 573, 91 S.Ct. 2022]), and that the magistrate must actually perform his neutral and detached function (*Lo-Ji Sales, Inc.* v. *New York* (1979) 442 U.S. 319, 326-327 [60 L.Ed.2d 920, 928-929, 99 S.Ct. 2319]), but the court has not construed the Fourth Amendment to impose territorial limitations upon magistrates. Our state Constitution contains language virtually identical to that of the Fourth Amendment. (Cal. Const., art. I, § 13.) That provision has not been construed to establish a territorial limitation on the issuance of warrants. In fact, in *People* v. *Fleming, supra,* 29 Cal.3d at pages 703 through 707, the California Supreme Court rejected the claim that there is an absolute territorial limitation upon the power of a magistrate to issue a search warrant.

 In *Fleming,* the court noted that while all judges are magistrates by virtue of Penal Code section 808, the office of magistrate is a different office from that of judge. Consequently, judicial officers acting as magistrates act independently from the jurisdiction of the court on which they sit. (29 Cal.3d at p. 703, fn. 3.) Magistrates derive their powers and jurisdiction from the Constitution and acts of the Legislature. (*Ibid.*) (7) The relevant statutes do not provide an express territorial limitation upon a magis-

---

[3] A further implicit endorsement of the distinction between fundamental jurisdiction and an act in excess of jurisdiction is found in *Massachusetts* v. *Sheppard, supra,* 468 U.S. at page 990 [82 L.Ed.2d at pages 744-745]. There the court held that law enforcement officers could properly rely upon the decision of the Massachusetts magistrate in issuing a search warrant even though the warrant was subsequently determined to be invalid on its face. The court reasoned, in part, that: "In Massachusetts, as in most jurisdictions, the determinations of a judge acting within his jurisdiction, even if erroneous, are valid and binding until they are set aside under some recognized procedure." That is precisely the rule in California with respect to the difference between jurisdiction in the fundamental sense and acts in excess of jurisdiction. (See *In re Griffin, supra,* 67 Cal.2d at pp. 347-348; *People* v. *Webb, supra,* 186 Cal.App.3d at pp. 411-412; *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com., supra,* 231 Cal.App.2d at pp. 509-510. See also *People* v. *Pompa-Ortiz, supra,* 27 Cal.3d at pp. 529-530.)

trate's power to issue a search warrant. (*Ibid.*) In fact, Penal Code section 1524, subdivision (b), provides that when a warrant is issued the property or things described "may be taken on the warrant from any place, or from any person in whose possession it may be."

Penal Code section 1528, subdivision (a) provides that when a magistrate is satisfied of the existence of the grounds for a warrant he must issue a warrant "to a peace officer in his county." Penal Code section 830.1 provides, in relevant part, that the authority of a peace officer extends to any place in the state as to a public offense committed, or which there is probable cause to believe to have been committed, in the political subdivision which employs him. In *Fleming* the court held that these statutes, read together, imply that at the very least a magistrate may issue an out-of-county warrant when he has probable cause to believe the evidence relates to a crime committed within his county and pertains to present or future prosecution there. (29 Cal.3d at p. 704.) The court examined the statutory provisions for attacking the validity of the warrant and found no language suggesting a territorial limitation on the jurisdiction of the issuing magistrate. (*Id.* at p. 705.) The court also considered the defendant's fears of forum shopping for a warrant and the inconvenience to a stranger to the investigation in being required to appear in another county to seek return of his property. The court concluded that those concerns were adequately addressed by limiting the issuance of a warrant to situations where there is probable cause to believe the evidence relates to a crime within the issuing magistrate's county and thus pertains to a present or future prosecution there. (*Id.* at p. 707.)

The *Fleming* decision was not based upon federal or state constitutional principles, nor was it based upon express statutory limitations. This is not to denigrate the importance of the limitation, nor to suggest that law enforcement officers and magistrates are free to disregard it. But it is nevertheless clear that the *Fleming* limitation does not implicate a magistrate's jurisdiction in the fundamental sense of the power to hear and determine the matter, nor does it implicate traditional Fourth Amendment standards. Accordingly, the failure to comply with the *Fleming* rule is not a type of irregularity which will, on its face, preclude application of the *Leon* rule. Of course, where an officer engages in forum shopping and knowingly or recklessly misleads the magistrate then the good faith required for application of the *Leon* rule will be lacking. But where good faith otherwise exists, the failure to include a *Fleming* showing in the affidavit for a search warrant does not render the affidavit constitutionally deficient and does not compel suppression under the Fourth Amendment.

We have noted previously that there is no basis for concluding that O'Connor omitted information from the affidavit in bad faith rather than

through inadvertence. There is no suggestion that the issuing magistrate wholly abandoned his judicial role in the matter. The search warrant was regular on its face. Finally, the affidavit in support of the search warrant was not so constitutionally deficient as to render official belief in probable cause entirely unreasonable. Accordingly, this is not an unusual case where exclusion of the evidence will further the purposes of the Fourth Amendment exclusionary rule and that rule is thus inapplicable. (*United States* v. *Leon, supra,* 468 U.S. at p. 921 [82 L.Ed.2d at p. 697].) Since California courts are compelled to deny motions to suppress evidence unless suppression is required by the federal exclusionary rule (*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744]), we must conclude that the trial court erred in granting defendants' motion to suppress the evidence in this case.

## DISPOSITION

The order of dismissal is reversed and the matter is remanded to the trial court with directions to set aside its order suppressing evidence and to enter a new and different order denying the motion to suppress.

Evans, Acting P. J., and DeCristoforo, J., concurred.

Respondents' petition for review by the Supreme Court was denied May 17, 1990. Mosk, J., was of the opinion that the petition should be granted.