[No. D029494. Fourth Dist., Div. One. June 2. 1998.]

In re ANDRES G. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
JOAQUIN G., Defendant and Appellant.

## COUNSEL

Dorothy J. Almour, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, San Diego County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.

Christopher Blake for Minors.

## OPINION

**BENKE, J.**—Andres G. and Joaquin G. were declared dependent children of the juvenile court. Father Joaquin G. (father) appeals, arguing the juvenile court erred in making a nonstatutory disposition by placing the children with respondent San Diego County Department of Social Services (Department) but detaining them with their parents and in ordering he submit to a psychological evaluation.

### BACKGROUND

Andres was born on November 3, 1993, and Joaquin on February 9, 1997. On July 22, 1997, a hospital hold was placed on five-month-old Joaquin when he sustained second degree burns after coming in contact with an iron. Joaquin's mother reported she was ironing on the floor while Joaquin slept in a low-lying bed nearby. She finished ironing, unplugged the iron and set it next to a wall near the bed. Feeling she was about to have an epileptic seizure, Joaquin's mother went to the bathroom to put water on her face. When she returned 15 minutes later Joaquin was on the floor and had been burned by the iron.

An examining physician concluded that at a minimum Joaquin's injuries were the result of neglect. While the distribution and number of burns suggested a nonaccidental injury, the nature of the burns themselves did not resemble those associated with intentional harm.

On July 23, 1997, a Welfare and Institutions Code[1] section 300, subdivision (b), petition was filed as to Joaquin and a section 300, subdivision (j), petition as to Andres. The petition as to Joaquin alleged physical harm as the result of unreasonable or neglectful acts or omissions. The petition as to Andres alleged a substantial risk of harm citing the allegations related to Joaquin.

A detention hearing was held on July 24, 1997. Department requested psychological evaluations of both parents. Father objected, stating he was not in the home at the time of Joaquin's injuries. The court authorized payment for such evaluations but did not order they be undertaken. The court ordered Joaquin detained at the Polinsky Center with the provision Department could, with the concurrence of Joaquin's counsel, detain him at home. Andres was detained with the parents.

The jurisdictional hearing was held on August 19, 1997. A social study prepared for the hearing opined Joaquin's injuries did not appear to have been intentionally inflicted but rather were the result of neglect. The parents submitted on the reports. The court found the allegations in the petitions true.

At the dispositional hearing, both Andres and Joaquin were declared dependent children pursuant to section 360, subdivision (b). Finding, pursuant to section 361, subdivision (b)(1) (now subd. (c)(1)), there would be a substantial danger to the health or safety of the children if returned home, the court removed physical custody from the parents and placed it with Department pursuant to section 361.2, subdivision (e). The court ordered Andres placed with a relative but detained him in his parents' home. As to Joaquin, the court made the same order with the proviso that the parents' psychological evaluations first be reviewed and that Joaquin not be returned home without the concurrence of his counsel.

## DISCUSSION

### A. *Nonstatutory Disposition*

 Father, Andres and Joaquin argue the trial court made an unauthorized disposition when, while finding by clear and convincing evidence it would be dangerous to return the children to the parental home, it gave

---

[1]All further statutory references are to the Welfare and Institutions Code.

physical custody to Department, and ordered the children placed with relatives but immediately detained them with their parents.[2]

All parties agree the orders were the result of a statutorily unauthorized, informal dispositional scheme employed by the San Diego County Juvenile Court. Department argues while the dispositions were unauthorized, all parties consented to them. Department contends the scheme provides a flexibility useful to Department, parents and the court and use of the scheme should be allowed in appropriate cases. We conclude the orders made by the juvenile court were in excess of its jusrisdiction. We further conclude that given the societal interests involved and the specificity of the statutory dispositional outline, authority to employ the nonstatutory scheme cannot be conferred by consent.

## 1. *Statutory Background*

The Welfare and Institutions Code provides a detailed plan for the disposition of a minor found to be a person described in section 300. When such a finding is made, and when the court judges the minor a dependent, it can make any order limiting the control exercised by the parents necessary for the protection of a child. (§ 361, subd. (a).) However, physical custody of the child can be taken from the parents, in the context of the present case, only if the juvenile court "finds clear and convincing evidence of . . . [¶] . . . a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor or would be if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents' . . . physical custody." (§ 361, subd. (c)(1).)

When the court orders the minor removed from the physical custody of a parent, and there is no noncustodial parent with whom the minor may be placed, the court must give custody and control of the minor to the probation officer who may place the minor, in the context of the present case, in (1) the home of a relative, (2) a foster home, (3) a licensed community care facility, (4) a foster family agency for placement, or (5) a group home. (§ 361.2, subds. (a)-(e).)

## 2. *Rejection of Unauthorized Dispositional Scheme*

In *In re Damonte A.* (1997) 57 Cal.App.4th 894, 899-900 [67 Cal.Rptr.2d 369], the court reviewed a dispositional scheme identical to the one employed in the present case and stated: "Nowhere in the statutes or rules is

---

[2]We recognize the disposition as to Joaquin required he not be returned home until the completion of the psychological studies of his parents and not without the concurrence of his attorney. Since we find the dispositional scheme employed defective as to both children, we describe both dispositions as an immediate placement with the parents.

there authorization for the court to declare a dependency, order the dependent child removed from the physical custody of its parents, order the care, custody, control and conduct of the minor to be under the supervision of the probation officer and then direct the probation officer to temporarily place the minor back into the home from which it was removed. The statutes contemplate that removal of the child from the physical custody of the parents will result in some *other* person or entity having physical custody of the child and that the child will be placed in an appropriate home *other* than that of the parent who had custody at the time the petition was filed. Accordingly, as it lacks a statutory basis, the juvenile court's removal order is invalid. We agree with appellant that the order permits DHHS to circumvent the requirement of section 361, subdivision (b) that removal from the parent's physical custody can be made only on a showing by clear and convincing evidence that removal is necessary to avert a substantial danger to the physical health or well-being of the minor."

The court further commented: "Respondent recognizes the removal order is not authorized by statute but argues appellant's fear of the potential for abuse of power by the social worker should not abolish a practice which furthers the purposes of the juvenile court. We fail to see what purposes of the dependency law can be furthered by this unauthorized practice which invites abuse that cannot be better addressed by the options available under the statute. Indeed, the practice, absent abuse, is the equivalent of an in-home dependency. We see no reason why DHHS should not be required to file a petition seeking a change of custody, if there is a factual basis, meeting the clear and convincing evidentiary standard rather than being able to effect a removal subject only to a subsequent review on motion of the parent. Had the Legislature wished to extend to the court unfettered discretion to fashion placement practices such as this, it would not have described the permissible options with such specificity in the several relevant code sections." (*In re Damonte A., supra,* 57 Cal.App.4th at p. 900.)[3]

We agree. We are troubled by, what at least appears to be, the artifice of making a finding that it is necessary to remove a child from the physical custody of the parents, and, thus, place custody with Department, and then immediately place the child physically back in the home. Not only does such a procedure entail an unseemly inconsistency, its effect is to either remove children from the home under circumstances the Legislature did not authorize or to place children in a dangerous setting.

---

[3]In *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1822-1824 [46 Cal.Rptr.2d 198], this court, while finding it unnecessary to reach the issue, expressed reservations similar to those voiced in *Damonte A.* concerning a scheme of detaining but not placing children with noncustodial parents pursuant to section 361.2.

### 3. *Consent to Unauthorized Disposition*

Department argues not only did father fail to object to the use of the court's nonstatutory dispositional scheme, the actions of his counsel indicated he consented and he cannot now raise the issue on appeal. We disagree.

#### a. *Law*

■ "A judgment is void if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties. Subject matter jurisdiction 'relates to the inherent authority of the court involved to deal with the case or matter before it.' [Citation.] Lack of jurisdiction in this 'fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] [¶] In a broader sense, lack of jurisdiction also exists when a court grants 'relief which [it] has no power to grant.' [Citations.] Where, for instance, the court has no power to act 'except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites,' the court acts without jurisdiction in this broader sense. [Citation.]" (*Carlson* v. *Eassa* (1997) 54 Cal.App.4th 684, 691 [62 Cal.Rptr.2d 884].)

"The consequences of an act beyond the court's jurisdiction in the fundamental sense differ from the consequences of an act in excess of jurisdiction. An act beyond a court's jurisdiction in the fundamental sense is void; it may be set aside at any time and no valid rights can accrue thereunder. In contrast, an act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time. [Citations.]" (*People* v. *Ruiz* (1990) 217 Cal.App.3d 574, 584 [265 Cal.Rptr. 886].)

■ Whether a party who has sought or agreed to an action in excess of a court's jurisdiction is estopped to complain depends on the importance of the irregularity and considerations of public policy. (*People* v. *Soriano* (1992) 4 Cal.App.4th 781, 785 [6 Cal.Rptr.2d 138]; *People* v. *Ellis* (1987) 195 Cal.App.3d 334, 343-345 [240 Cal.Rptr. 708].)

Reviewing courts have repeatedly allowed acts in excess of jurisdiction to stand when the acts were beneficial to all parties and did not violate public policy (see, e.g., *Cowan* v. *Superior Court* (1996) 14 Cal.4th 367, 370-376 [58 Cal.Rptr.2d 458, 926 P.2d 438] [trial court allowed defendant to plead guilty to a time-barred lesser included offense]), or when allowing objection would countenance a trifling with the courts. (See, e.g., *In re Griffin* (1967)

67 Cal.2d 343, 346-347 [62 Cal.Rptr. 1, 431 P.2d 625] [trial court as a result of defendant's actions revoked probation after expiration of probation period].)

On the other hand, courts have voided acts in excess of jurisdiction when the irregularity was too great, or when the act violated a comprehensive statutory scheme or offended public policy. (*People* v. *Mendez* (1991) 234 Cal.App.3d 1773, 1778-1784 [286 Cal.Rptr. 216] [reducing felony conviction to misdemeanor and sealing conviction record]; *In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1020, 1024-1027 [230 Cal.Rptr. 203] [stipulation of parties to deprive court of authority to modify child custody and visitation orders in dissolution proceeding]; *People* v. *Blakeman* (1959) 170 Cal.App.2d 596, 598 [339 P.2d 202] [banishment as condition of probation].)

### b. *Discussion*

 The trial court's act of finding it necessary to remove physical custody from the parents, place custody with Department and then immediately return the children to the parental home was an act not authorized by the Welfare and Institutions Code and was in excess of the trial court's jurisdiction. (*In re Damonte A.*, *supra,* 57 Cal.App.4th at pp. 899-900.) That act, which Department and the juvenile court routinely employ, whether consented to, sought by, or happily accepted by the parties and the juvenile court, systematically contravenes a comprehensive statutory scheme operating in an area of special social interest and has the effect of reconfiguring the responsibilities of the court and Department in a manner not contemplated by the Legislature. While we accept the good faith of all involved, such a routine and fundamental readjustment of a law with such important social implications cannot be undertaken simply because the parties believe it expedient or even useful to the overall goal of the legislative scheme. We suggest Department and interested parties take up this matter with the Legislature.

### B. *Psychological Evaluation*

Father argues there was no basis for the order requiring he submit to a psychological evaluation as a condition of the reunification plan. He states he was not present in the home at the time Joaquin was burned and there was no reason to conclude he could not adequately protect or parent his children.

Department has submitted certified records indicating the evaluations have been completed and asks we find the issue moot. Father agrees the

evaluation has been completed but argues we address the general issue as a matter of continuing institutional interest and since the nature of the issue is such that it will often become moot before the case can be reviewed on appeal.

We find the psychological evaluation ordered by the court has been completed and the issue is moot. (See Code Civ. Proc., § 909.) While it may be that often, but not always, the issue will be moot before it can be reviewed on appeal, the appropriateness of any given order is so case-specific that little use would be served by our review of the matter in any given case. If a parent believes an order requiring submission to a psychological evaluation is improper, he may always seek redress by way of writ.

The dispositional order of the juvenile court is reversed. The court is directed to conduct a new dispositional hearing as to both Andres and Joaquin.

Kremer, P. J., and Huffman, J., concurred.