Filed 4/28/25  In re Covarrubias on Habeas Corpus CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re SANTIAGO COVARRUBIAS on Habeas Corpus. | D083996<br><br>(Super. Ct. No. SCD264540) |

APPEAL from an order of the Superior Court of San Diego County, David M. Gill, Judge.  Dismissed.

Courtney D. Reed, under appointment by the Court of Appeal, for Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Marvin E. Mizell, Deputy Attorneys General, for Respondent.

Santiago Covarrubias appeals from an order denying a motion for discovery.  He made his request in conjunction with a postjudgment writ of habeas corpus which asked relief from a purported violation of the California

Racial Justice Act of 2020 (the Act).[1]  The issue we address is whether the order denying Covarrubias's discovery motion[2] is appealable.  We conclude that the order is not appealable and consequently dismiss this appeal.

FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Covarrubias and an accomplice engaged in a verbal quarrel with Damon Green while all of them were in a taco shop.  Covarrubias and his accomplice left the establishment, returning shortly afterwards.  Covarrubias shot and killed Green before fleeing from the scene.  After an investigation, law enforcement investigators arrested Covarrubias some years later.  Prosecutors charged Covarrubias with murder.

In March 2017, a jury convicted Covarrubias of first degree murder and found true the allegation that he personally used a firearm.  On April 11, 2017, the court sentenced him to a total term of 50 years to life.  We affirmed the conviction in September 2018.

Following passage of the Act in 2020, Covarrubias, representing himself, submitted a writ of habeas corpus in the trial court.[3]  Along with his

---

[1]    The Act included additions and changes to multiple code sections.  Our discussion will focus on Penal Code section 745. All further references are to the Penal Code unless otherwise stated.

[2]    When referring to obtaining information from state entities we note the Act uses the term "disclosure," not "discovery."  However, cases discussing the Act use the word "discovery."  (See, e.g., *Young v. Superior Court* (2022) 79 Cal.App.5th 138 (*passim.*).)  We use both words interchangeably.

[3]    Covarrubias characterized his briefing as a motion.  The trial court responded with a letter to Covarrubias explaining that the Act did not allow a motion for relief at the postjudgment stage of the case.  However, the court treated the motion paperwork as a writ of habeas corpus.

writ, Covarrubias filed a motion for discovery seeking trial and sentencing transcripts, statistical data regarding charging and sentencing decisions broken down by race, and a copy of the indeterminate sentencing act. The trial court denied Covarrubias's petition for habeas corpus and dismissed his discovery motion for lack of jurisdiction. Covarrubias appealed both rulings.

In May 2024, this court dismissed the habeas corpus appeal, stating, "The proper procedure when a superior court denies a petition for writ of habeas corpus in a noncapital case is for the petitioner to file a new petition in the Court of Appeal." Noting the trial court also denied Covarrubias's discovery request, we appointed counsel to Covarrubias and requested briefing regarding: "[W]hether the order denying defendant's motion for discovery under Penal Code section 745, subdivision (d) is an appealable order."

Filings from Covarrubias and the People addressed our decision in *In re Montgomery* (2024) 104 Cal.App.5th1062 (*Montgomery*).[4] However, one day after briefing concluded in this case, a different appellate district published *People v. Serrano* (2024) 106 Cal.App.5th 276 (*Serrano*),[5] which disagreed with *Montgomery*. We asked each side to explain their respective views on *Serrano*.

With that context we begin our examination of the issue on appeal: whether the Act allows a freestanding discovery motion without a pending,

---

[4] Review granted December 11, 2024, S287339.

[5] Review granted January 15, 2025, S288202.

underlying matter. (See *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1261 (*Gonzalez*) [a trial court "exceed[s] its jurisdiction by ordering postconviction discovery in the absence of any proceeding pending before that court"].) We hold that, as written, the Act indeed creates an exception to well-established criminal procedure. We further hold that denial of the discovery request is not appealable.

## DISCUSSION

The Act is sweeping in its ambition. It seeks "to eliminate racial bias from California's criminal justice system." (Stats. 2020, ch. 317, § 2.) To address this important goal, the Act provides several grounds for attacking convictions in which a defendant's race, ethnicity, or national origin influenced a participant or decision maker in a case. Two of these options concern events likely requiring no references beyond the defendant's case (e.g., use of racially offensive language by law enforcement, jurors, court personnel or attorneys, other exhibitions of bias aimed at a defendant during a court proceeding due to the defendant's race, ethnicity, or national origin). (§ 745, subd. (a)(1), (2).)

But other violations of the Act require a comparison between how state actors treat one set of defendants versus another. In those instances, the Act requires a defendant's petition for relief to go beyond occurrences during a single proceeding, and to show *patterns* of behavior exhibited towards members of the defendant's race, religion, ethnicity or national origin. For instance, a defendant could argue she or he "was charged or convicted of a more serious offense than defendants of other races, ethnicities, or national origins who have engaged in similar conduct and are similarly situated." (§ 745, subd. (a)(3).) Or, a defendant could show she or he received "[a] longer or more severe sentence [than those imposed] on other *similarly situated*

4

*individuals* convicted of the same offense, and longer or more severe sentences were *more frequently* imposed for that offense on people that share the defendant's race, ethnicity, or national origin than on defendants of other races, ethnicities, or national origins." (§ 745, subd. (a)(4)(A), italics added.) As a third avenue for seeking relief, a defendant may demonstrate the Act was violated because "[a] longer or more severe sentence was imposed on the defendant than was imposed on other *similarly situated individuals* convicted of the same offense, and longer or more severe sentences were *more frequently* imposed for the same offense on defendants in cases with victims of one race, ethnicity, or national origin than in cases with victims of other races, ethnicities, or national origins, in the county where the sentence was imposed." (§ 745, subd. (a)(4)(B), italics added.) Terms like "more frequently" and "similarly situated individuals" reflect a defendant must compare one group of defendants against another. That evidence must be strong enough that a court could rationally conclude a state actor behaved in any given case motivated by explicit or implicit bias. (§ 745, subd. (h)(1), (4).) And even with the low burden of proof at the prima facie stage, that showing will require at least *some* evidence adduced from multiple events, not only from the defendant's own case or assumptions. (§ 745, subd. (h)(2) ["For purposes of this section, a 'substantial likelihood' requires more than a mere possibility, but less than a standard of more likely than not"]; *People v. Ruiz* (1990) 217 Cal.App.3d 574, 583 ["[W]here an inference is to be drawn, it must be a reasonable conclusion from the evidence and cannot be based upon suspicion, imagination, speculation, surmise, conjecture, or guesswork"].)

That means a petition requires information almost exclusively in the hands of prosecuting agencies. While the Act is silent on this, we hold that,

5

by design, the Act requires that fact gathering through discovery begins prior to filing a petition. Three further points support our observations.

First, in its non-codified statement of intent, the Legislature described its view the Act would "ensure that individuals have access to all relevant evidence, including statistical evidence, regarding potential discrimination in seeking or obtaining convictions or imposing sentences." (Assem. Bill No. 2542 (2019-2020 Reg. Sess.) § 2, subd. (j); see *id.*, subd. (i).) We understand that publicly available information might fill that gap and provide evidence to support a court's prima facie finding. (See, e.g., Hyson, *Who gets parole? Investigation reveals stark racial differences in past sentencing of robbery murder cases* (Mar. 27, 2025) <https://www.kpbs.org/news/racial-justice-social-equity/2025/03/27/who-gets-parole-investigation-reveals-stark-racial-differences-in-past-sentencing-of-robbery-murder-cases> [as of April 28, 2025], archived at <https://perma.cc/2BS6-9KS5> [description of successfully culling publicly available materials to find evidence of discrimination in prosecution and parole practices].) However, relying on private individuals, or indeed incarcerated individuals, to gather this data will leave many defendants without access to important state evidence to which the Legislature wanted defendants to have access. (§ 745, subd. (d) ["A defendant may file a motion requesting disclosure to the defense of all evidence relevant to a potential violation of subdivision (a) in the possession or control of the state"].)

Second, like *Serrano* and the concurrence in *Montgomery*, we find persuasive that section 745, subdivision (d) uses the phrase "all evidence relevant to a *potential* violation" of the Act. (Italics added.) We find use of the term "potential violation" supports our view that the Legislature envisioned that prior to filing a petition for relief, defendants would engage in

6

preliminary exploration of whether facts exist to support the conclusion that her or his conviction or sentence rested on bias or animus. If the superior court is unable to consider a discovery motion without first issuing an order to show cause following a habeas corpus petition, we are unable to envision many scenarios in which a defendant could set forth a prima facie case for relief.[6] Without freestanding discovery motions, a defendant could not gather the evidence contemplated by the Legislature to use as "facts that, if true, establish that there is a substantial likelihood that a violation of [the Act] occurred." (§ 745, subd. (h)(2).)

Finally, like *Serrano*, we are mindful that this would not be the first time the Legislature recognized the need for a discovery mechanism without an underlying pending proceeding. As stated earlier, a trial court historically lacked jurisdiction to order postconviction discovery unless and until a defendant filed a petition for writ of habeas corpus stating a prima facie case for relief. (*Gonzalez, supra*, 51 Cal.3d at pp. 1258-1261.) However, in 2002, section 1054.9 was enacted to provide postjudgment discovery unrelated to a pending proceeding in certain case types. (*In re Steele* (2004) 32 Cal.4th 682 (*Steele*).)[7] Section 1054.9 allows for postconviction discovery

---

[6]     We observe that a hollow habeas corpus petition filed exclusively for the purpose of obtaining post-final discovery reduces the extraordinary writ of habeas corpus to the point of insignificance.

[7]     Section 1054.9 initially applied to defendants sentenced to death or life imprisonment without the possibility of parole (see former § 1054.9, added by Stats. 2002, ch. 1105, § 1). The statute was later amended to include defendants who had ever been convicted of a serious felony or a violent felony resulting in a sentence of 15 years or more. (See § 1054.9, as amended by Stats. 2019, ch. 483, § 1).

*before* filing a habeas corpus petition, "to assist in stating a prima facie case for relief." (*Steele*, at p. 691.)  As "[r]easonably construed, the statute permits discovery as an aid in preparing the petition, which means discovery may come *before* the petition is filed." (*Ibid.*, italics added.)  Under section 1054.9, a defendant is not required to state a prima facie case for habeas relief to obtain postconviction discovery.  (*Steele*, at p. 691.)

Both section 1054.9 and the Act aim to facilitate fact gathering by the defendant before she or he seeks sentencing or other relief from a trial court. The Legislature is within its power to create a freestanding discovery motion to accomplish this aim.  This serves the dual purpose of avoiding the filing of unworthy postjudgment motions while allowing a defendant access to evidence necessary for a trial court to evaluate fairly whether to issue an order to show cause.  The trial court erred by not hearing the discovery motion.

Comparison to section 1054.9 further strengthens our conclusion that the order denying discovery is not an appealable order.  *Steele* is informative here.  Analyzing the same question we do here, but for a motion brought pursuant to section 1054.9, our Supreme Court said that if either party is dissatisfied with the trial court's discovery decision, it "may challenge that ruling by a petition for writ of mandate in the Court of Appeal." (*Steele, supra*, 32 Cal.4th at p. 688.)  Using the writ procedure expedites the discovery process and encourages quick resolutions.  (*Id.* at p. 692.)  We see no reason to depart from that reasoning here.  We hold the denial of Covarrubias's discovery motion is not appealable but must proceed by writ of mandate.

## DISPOSITION

The appeal is dismissed.

RUBIN, J.

I CONCUR:

BUCHANAN, J.

I CONCUR IN THE RESULT:

I concur in the result for the reasons stated in the majority opinion in *Montgomery, supra*, 104 Cal.App.5th 1062.

IRION, Acting P. J.